Euggles, C. J.
 

 The power of the supreme court to reverse the judgment rendered in the superior court of the city of New York, for error in fact, was not disputed on the argument of this case. Nor was it denied, that the United States courts have exclusive jurisdiction in suits against consuls of foreign states residing here. But it was insisted, that the defendant’s exemption, as a consul, from liability to be sued in the state court, was his personal privilege; and that he waived it, by pleading to the merits, and going to trial, without raising the objection in the court below. It was also further contended, that the United States courts have no jurisdiction, in a case like the present, *where the ^ *573 consul was sued together with another person on a joint contract, and, therefore, that the suit was rightly brought in the state court. The points thus raised present questions for the consideration of this court, which, if decided against the defendant, are conclusive in favor of affirming the judgment of the supreme court, and render the examination of the other questions raised on the argument unnecessary.
 

 The exemption of an ambassador, or other diplomatic minister, from liability to be sued or prosecuted in the courts of the country to which he is accredited, is the privilege of his sovereign or government; it is accorded to the office and not to the individual.
 
 (Barbuit’s Case,
 
 Talbot’s Cases 831.) It is founded on the law of nations, and does not depend on the law of the country in which the functions of the minister are to be exercised. The
 
 *578
 
 extent of the immunities to which a consul is entitled, under the law of nations, does not appear to be very clearly defined by writers on public law. According to Vattel, a consul is not entitled to the privileges of a public minister; yet, bearing his sovereign’s commission, and being, in this quality, received by the government of the country in which he resides, he is, in a certain degree, entitled to the protection of the law of nations. The sovereign, by the very act of receiving him, tacitly engages to allow him all the liberty and safety necessary to the proper discharge of his functions, without which the admission would be nugatory and delusive. (Vattel, book 2, ch. 2, § 34.) The same writer further says, that the functions of a consul seem to require that he should be independent of the ordinary criminal justice of the place where he resides, so as not to be molested or imprisoned, unless he himself violate the law of nations by some enormous crime; and that in such case, the respect due to his master requires that he should be sent home to be punished; and that such is the mode pursued by states that are inclined to preserve a good understanding with each other.
 

 Other writers, however, regard a consul as amenable, like a private individual, to the civil and criminal law of the country *to which he is accredited. (2 -* Brown, Civ. and Adm. Law, 506; Wicquefort on “The Ambassador,” book 1, § 5.) In 1793, the Genoese consul was indicted in the circuit court of the United States for the district of Pennsylvania for a misdemeanor, and tried and convicted. In this case the privilege was disallowed or disregarded, but the consul was afterwards pardoned, upon condition that he surrendered his commission and
 
 exequatur. (United States
 
 v.
 
 Ravara,
 
 2 Dallas 297.)
 

 The privileges of a consul, however, do not always depend on the law of nations. They are frequently regulated by treaty; and by the treaty between the
 
 *579
 
 United States and the republic of Ecuador (Art. 29), the consuls of that republic are entitled to all the rights, prerogatives and immunities of the consuls of the most favored nations. The defendant, therefore, in his consular office, must be regarded as entitled to some rights, prerogatives and immunities, under this treaty, if not under the law of nations, and they are of the same nature and character as those to which a public minister is entitled.
 

 An ambassador cannot renounce a privilege accorded to his office by the law of nations, because it is the privilege of his government, and not personally his own.
 
 (Barbuit’s
 
 Case, Talbot’s Cases 281.) The immunities of these public agents are secured to them by public law, in order that they may not be embarrassed in the exercise of their functions, by the action of the government of the country where they reside, or of any individual within it. The privileges of the consular office, whether derived from the law of nations or from treaty, stand on the same footing, and for the same reason they cannot be renounced by the officer.
 

 It belongs to the United States courts, and not to the courts of this state, to determine what privileges and immunities a foreign minister or consul is entitled to. The states, by adopting the federal constitution, transferred to the general government the. right to exercise a portion of the judicial power which had previously belonged to the several states. The intention was to make the judicial authority of the ^federal gov- ^ ^ ^ ernment co-extensive with its political powers. *- Its judicial powers, therefore, embrace “all cases in law and equity, arising under the constitution, the laws of the United States, and all treaties made or which shall be made under their authority.” (Constitution, art. iii, § 2.) The federal government has charge exclusively of the foreign relations of the country, of the regulation of commerce with foreign nations, and of all political
 
 *580
 
 intercourse between this country and others. The federal power of the United States is, therefore, made to extend “to all cases affecting ambassadors, or other public ministers and consuls.” (Art. iii., § 2.) The judiciary act of 1789 (1 U. S. Stat. 73), establishes district courts and defines their authority. (§§ 2, 3, 9.) The latter section gives them jurisdiction
 
 “exclusively of the courts of the several states,
 
 of all suits against consuls and vice-consuls,” with an exception not affecting the present case.
 

 The defendant, therefore, is exempted, as a consul, from liability to be sued in the state courts. But this exemption is neither his personal privilege, nor the privilege of the state by which he was commissioned. It is not founded on the law of nations, nor on any treaty between his government and that of this country. If it can be regarded as a privilege belonging to him or to his office, it is only because it secures to him the protection of the national government, which is responsible to his own for any violation of his rights derived under the law of nations or from treaty. But it does not exempt him from liability to respond to his creditors, or to answer for his misconduct; nobody denies the liability of a consul to-be sued in a civil action; the act of congress concedes it, and provides for it. It prescribes the tribunal in which a consul in this country is to be called on to answer, and excludes the state courts from jurisdiction. The object of this exclusion was, to keep within the control of the federal government, and subject to the authority of its courts, all cases and controversies which might in any degree affect our foreign relations. The United States government has an interest in maintaining this exclusive jurisdiction, for the pur- * 5811 -ting it from being involved *in -* controversies with foreign powers, without its consent, and for acts not its own. But this is matter of internal regulation between the general government and
 
 *581
 
 the several states, over which foreign governments have no control. The exemption of a consul from liability to be sued in a state court, if it can be called a privilege, is not the privilege of the consul, nor of his sovereign, but of the United States government; and, therefore, it cannot be renounced by the consul. In
 
 Mannhardt
 
 v.
 
 Soderstrom
 
 (1 Binn. 138), the defendant, who was the Swedish consul, pleaded to the merits of the case, and afterwards moved to quash the proceedings, on the ground that the state court had no jurisdiction. The motion was granted, Chief Justice Tilghman remarking, that
 
 “
 
 the court will put a stop to the proceedings, in any stage, on its being shown that they have no jurisdiction.”
 

 But the case of
 
 Davis
 
 v.
 
 Packard
 
 (7 Peters 276; 8 Id. 314) is a direct and conclusive adjudication upon the point we are now considering. That case came before the supreme court of the United States, on a writ of error to the court of last resort in this state. Davis, the defendant in that suit, was sued in the supreme court of this state, on a recognisance of bail entered into by him in a suit of the plaintiffs against T. Hill. He pleaded several pleas to the merits of the case, on which issues were joined, and on which a verdict was found and judgment rendered against him; he removed the record by a writ of error to the court for the correction of errors, and then assigned for error in fact, that he was consul-general of the king of Saxony; this objection had not been raised, by plea or otherwise, in the court in which he was sued. The defendants in error pleaded
 
 in nullo est erratum.
 
 The judgment of the supreme court was affirmed, on the ground, among others, that after having appeared and pleaded to the merits, he could not assign as error in fact, that he was such consul, and thereupon allege that the supreme court had not jurisdiction. The case went to the supreme court of the United States on a writ of error. The plaintiffs there raised the objection, that Davis, the consul, should have * 582 1 P*ea<^e<^ *° jurisdiction of the state court, *in ^ the original suit, but the judgment was nevertheless reversed.
 

 The only remaining point to be considered is, whether the state courts have jurisdiction in a suit against a consul, where he is sued together with another person, on a joint contract. The plaintiff contends that they have, on the ground that the United States courts have not jurisdiction in such a case; but this we think is a mistake. The constitution extends the jurisdiction of the United States courts to all cases
 
 “
 
 affecting consuls,” and the judiciary act makes it exclusive of the state courts “ in all suits against consuls.” This suit, being against a consul, is within the terms both of the constitution and of the act, although he is sued jointly with another. Whether the ninth section of that act be construed strictly according to its letter, or freely in regard to its object and intention, the result must be the same. Instead of excluding from the jurisdiction of the district court a case in which the consul and another are necessarily co-defendants, it brings the co-defendant within that jurisdiction, by unavoidable implication. The intent of the constitution and of the statute cannot be effectually carried out, upon any other construction. A consul cannot renounce the exemption from being sued in a state court, because it is not his personal privilege, but the right and privilege of the United States that he should be sued in the federal courts; and for the like reason, he cannot avoid the exclusive jurisdiction of those courts by joining in a contract with another person, and thus subjecting himself to a joint suit.
 

 It has, in some instances, been provided by treaty, that when a consul engages in commerce, he shall be subject to the same laws to which private individuals are subject in the same place; as in the treaty between the United
 
 *582
 
 States and the Two Sicilies; but these are exceptions to the general law of nations.
 

 The case of
 
 Strawbridge
 
 v.
 
 Curtis
 
 (3 Cranch 267), decided under the 11th section of the judiciary act of 1789, is inapplicable to the present case, by analogy or otherwise. The provision in regard to suits against consuls, is evidently founded on reasons of public policy which do not exist in regard to cases between citizens of different *states; and the jurisdiction of the ^ United States courts is, in the one case, exclusive, *- and in the other, concurrent with that of the state courts. This case has, moreover, been virtually overruled in reference to suits between citizens of different states. (2 Howard 255.)
 

 Although we cannot look with favor on the conduct of the defendant, in taking his chance of success in the supreme court, without raising the objection to its jurisdiction, and afterwards reversing the judgment on that ground, we think, the judgment of the supreme court stands on grounds which cannot be shaken, and must be affirmed.
 

 Judgment affirmed,