**PINE VIEW GARDENS, INC., Appellant,**

v.

**JAY'S FROSTED FOODS, INC., Appellee.**

**No. 6659.**

District of Columbia Court of Appeals.

Argued Nov. 22, 1972.

Decided Jan. 24, 1973.

———◆———

Jerome P. Friedlander, II, Washington, D. C., with whom Mark P. Friedlander, Mark P. Friedlander, Jr., Blaine P. Friedlander, Harry P. Friedlander and Marshall H. Brooks, Washington, D. C., were on the brief, for appellant.

Anton M. Weiss, Washington, D. C., with whom Paul L. Pascal, Washington, D. C., was on the brief, for appellee.

Before GALLAGHER, PAIR and YEAGLEY, Associate Judges.

PER CURIAM:

This appeal challenges a judgment entered in an action for the balance due on an account.

Appellee complained against appellant demanding $941.23 representing the balance of an account alleged to have been in arrears on October 30, 1971. Answering the complaint, appellant denied any liability for the amount claimed.

The evidence at trial was that at various times prior to October 9, 1969, appellee—a wholesaler—sold and delivered to appellant meat for which bills in the sum of $4,941.-23 were rendered. Introduced into evidence were 13 invoice-receipts signed by appellant's agent acknowledging delivery of the merchandise. Introduced also was a letter under date of November 6, 1969, addressed to appellee and signed by appellant's president, which reads:

Gentlemen:

We are planning on or about December 7, 1969 to consumate [sic] the sale of Pine View Gardens, Inc. We want to let you know about the possible sale and transfer of assets under the sale.

Although partial payments will continue to be made, the total balance will be paid from the proceeds of the sale.

For purpose of accuracy, will you please confirm the balance of your account as of October 9, 1969. Our records show the balance to be $2941.23.

It was uncontroverted that subsequent to November 6, 1969, and prior to the commencement of the action, appellant paid appellee $2,000 on the account, leaving a balance of $941.23.

It appears that sometime during December 1968 appellant discovered discrepancies in its inventory giving rise to suspicion that its purchasing agent had been guilty

of dishonest practices.[1] In this connection, there was testimony that the agent, when confronted, denied any wrongdoing, but immediately thereafter left appellant's employment without receiving his paycheck and was not thereafter seen or heard from.

The substance of appellant's defense to the action was that its purchasing agent circumvented established office procedures, ordered more meat than was required, and converted to his own use and profit the excess.

Upon consideration of the evidence and the argument of counsel the trial court found against appellant and entered judgment for appellee in the amount of its demand.

Urging reversal, appellant's sole contention is that appellee failed to establish by a preponderance of the evidence that the meat, for which payment was sought, was ever delivered. Appellant reasons that because there was no testimony by appellee's employee who was mainly involved in making deliveries of meat to appellant, there was a failure of proof that meat was in fact delivered. Appellant insists that the unexplained absence of the employee at trial entitled it to a presumption that, if the employee had testified, his testimony would have tended to establish that there was no delivery of the meat.

Since appellant did not identify at trial the specific items of meat which it claimed were not delivered, it is difficult to understand how, after more than two years, appellee's employee could have been expected to remember specific transactions with appellant extending over a period of some 11 months.

In any event, the 13 invoice-receipts, admittedly signed by appellant's purchasing agent, evidenced delivery of items of meat to appellant's premises. Moreover, the letter of appellant's president under date of November 6, 1969, acknowledged that as of October 9, 1969, there was a balance of $2,941.23 owing on the account for such meat. But more than this, it is uncontroverted in the record that, subsequent to the discovery of the alleged dishonest practices of its purchasing agent, appellant paid $2,000 of the balance which its president had acknowledged as owing.

This court is satisfied from its review of the record that the trial court committed no error when it found for appellee and entered judgment accordingly.

Because appellant's contentions are, in the view of the court, wholly lacking in substance, we are persuaded to conclude, as did the Circuit Court recently in United States v. Certain Land in Squares 532 and 570, etc., Parcels 1 and 9, D.C.Cir., 473 F.2d 94 (decided November 7, 1972), that:

> We will not speculate as to what motivated the decision to take an appeal here, but certainly it would not seem to have been based upon even a faint hope of success on the legal merits of this appeal. Hence, we direct that all costs of this frivolous appeal be assessed against the appellant. [At 95.]

Pursuant to our Rule 38, we therefore dismiss this appeal as frivolous,[2] assess costs, if any, against appellant, and award appellee damages in the sum of $100 as reimbursement for attorney's fees.

So ordered.

---

1. Appellant offered no explanation as to why some 11 months after discovery of the alleged irregularities, its president, in the November 6, 1969 letter to appellee, neither disputed any item in the account nor asserted any failure of delivery, but rather acknowledged as due the amount as reflected in the invoice-receipts.

2. We share the concern expressed by the court in Furbee v. Vantage Press, Inc., D.C.Cir., 464 F.2d 835, 837 (1972):
   Appellate courts are burdened by a heavy volume of business and the problem is needlessly aggravated when frivolous appeals are taken. . . .