**H.R.H. Prince Turki Bin ABDULAZIZ, et al., Plaintiffs-Appellees,**

v.

**METROPOLITAN DADE COUNTY, et al., Defendants,**

Michael Fisten, Larry Janse, James Murray, Jr., Richard Fandrey, Bera E. Pitts, Jr., Roy F. Sommerhoff, Constance L. Kubik & Andres Isidro Falcon, Defendants-Appellants.

No. 83–5015.

United States Court of Appeals, Eleventh Circuit.

Sept. 18, 1984.

Jerry B. Katzen, South Miami, Fla., for Fisten, Janse, Murray and Fandrey.

Steven D. Ginsburg, Ginsburg, Nagin, Rosin & Ginsburg, Coral Gables, Fla., Norman Malinski, Miami, Fla., for Pitts, Sommerhoff, Kubik and Falcon.

Lee, Schulte, Murphy & Coe, P.A., Jack M. Coe, Miami, Fla., for H.R.H. Prince Turki Bin Abdulaziz and Princess Hend Al-Fassi.

Before RONEY and HENDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

RONEY, Circuit Judge:

This case raises issues as to whether a certificate of diplomatic status granted after the commencement of a suit supports dismissal of the suit based on diplomatic immunity, and whether a grant of diplomatic status is reviewable by this Court. We hold that once the United States Department of State has regularly certified a visitor to this country as having diplomatic status, the courts are bound to accept that determination, and that the diplomatic im-

munity flowing from that status serves as a defense to suits already commenced. We therefore affirm the dismissal of the claims made against the Saudi Arabian diplomats in this case.

The claims against the diplomats were actually asserted as counterclaims in response to a 42 U.S.C.A. § 1983 suit alleging Fourth and Fourteenth Amendment violations, brought by the Saudi Arabians before the State Department certified them to have diplomatic status. The suit arose out of an unusual factual situation.

H.R.H. Prince Turki Bin Abdulaziz, a member of the ruling family of the Kingdom of Saudi Arabia, Princess Hend Al-Fassi, his wife, and Sheikha Faiza Ali Helmi, his mother-in-law, were residents of the Cricket Club condominium in Dade County, Florida. On February 26, 1982, representatives from a Florida State Attorney's office obtained a search warrant after inquiry with the United States Department of State revealed that Prince Turki and his family did not have diplomatic status. The warrant was based on the affidavit of Abdelmejid Daifi, a former employee of Prince Turki, who alleged that Prince Turki was holding an Egyptian named Nadia Lutefi against her will. Miami Dade Police officers attempted to execute the warrant. A "scuffle" ensued at the apartment between Prince Turki, his family and bodyguards, and the officers that were attempting to execute the warrant. On March 2, 1982, Prince Turki and his family brought this § 1983 action for violation of their civil rights against Metropolitan Dade County and the officers and the agents involved.

On March 11, 1982, the defendants counterclaimed alleging injuries from the encounter. Subsequently the State Department certified that on April 1, 1982, papers were filed which qualified Prince Turki and

his family for diplomatic status. The plaintiffs moved to dismiss their complaint, and to dismiss the counterclaims on the ground that they had diplomatic immunity from suit. The district court dismissed the action November 30, 1982.

Defendants, seeking to maintain their counterclaims against Prince Turki and his family, challenge plaintiffs' diplomatic status, assert that the immunity was unsubstantiated, that immunity was waived, and that discovery was improperly curtailed.

The controlling statute on diplomatic immunity is the Diplomatic Relations Act of 1978[1] which incorporated the 1961 Vienna Convention on Diplomatic Relations[2] and repealed the 1790 statute on diplomatic immunity[3] that had been in effect unaltered for almost two hundred years. The courts have recognized that diplomatic immunity serves the needs of the foreign sovereign and that the diplomat's privilege is "merely incidental to the benefit conferred on the government he represents." *United States v. Arlington*, 669 F.2d 925, 930 (4th Cir.1982), *cert. denied*, 459 U.S. 801, 103 S.Ct. 23, 74 L.Ed.2d 39 (1982). The purposes of such immunity "are to 'contribute to the development of friendly relations among nations' and 'to ensure the efficient performance of the functions of the diplomatic missions.'" *Hellenic Lines, Ltd. v. Moore*, 345 F.2d 978, 980 (D.C. Cir. 1965). Pursuant to the Diplomatic Relations Act and the Vienna Convention, diplomatic personnel are classified into categories that are granted specific immunities from legal action while residing in the United States.

The Diplomatic Relations Act, 22 U.S.C.A. § 254a–e, clearly establishes diplomatic immunity as a defense. Section 254d states

[a]ny action or proceeding brought against an individual who is entitled to

---

**1.** Pub.L. No. 95–393, 92 Stat. 808 (1978) (codified at 22 U.S.C.A. §§ 254a–e (1979 & Supp. 1983)).

**2.** 23 U.S.T. 3227 T.I.A.S. No. 7502, 500 U.N.T.S. 95 (April 18, 1961) (entered into force with respect to the United States on December 13, 1972).

**3.** Act of Apr. 30, 1790, ch. 9, 1 Stat. 1217 (codified at 22 U.S.C. §§ 252–54 (1976) (repealed 1978) (current version of 22 U.S.C.A. §§ 254a–e (1979 & Supp.1983)).

immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations, under sections 254b or 254c of this title, or under any other laws extending diplomatic privileges and immunities, shall be dismissed. Such immunity may be established upon motion or suggestion by or on behalf of the individual, or as otherwise permitted by law or applicable rules of procedure. The language of the statute addresses suits against diplomats. The Senate Report on the Act indicates that § 254d intends "dismissal by a court ... of any action or proceeding where immunity is found to exist." Pub.L. No. 95–393, 1978 U.S.Code Cong. and Ad.News (92 Stat.) 1935, 1939.

In this action, Prince Turki was apparently eligible for, but had not been granted diplomatic status at the time he initiated his § 1983 suit. After the action was commenced and the counterclaims were filed, he sought and was granted diplomatic status by the State Department.

■■■ Although defendants argue that the State Department certificate is reviewable in court, the courts have generally accepted as conclusive the views of the State Department as to the fact of diplomatic status. *See Carrera v. Carrera*, 174 F.2d 496, 497 (D.C.Cir.1949). In *Carrera* it was enough that an ambassador had requested immunity and the State Department had recognized that the person for whom it was requested was entitled to it.

Defendants argue that plaintiff's classification as "special envoy" is not protected by the Diplomatic Relations Act. Under the Vienna Convention, the State Department has the broad discretion to classify diplomats. The broadness in the language of the Vienna Convention is necessary, since it is the foreign country that actually ranks its envoys, not the State Department. *See* A New Regime of Diplomatic Immunity: The Diplomatic Relations Act of 1978, 54 Tul.L.Rev. 661, 682 n. 112 (1980) (citations omitted). Article 14 of the Vienna Convention classifies "envoys" as Heads of Missions. Heads of Missions are defined in

§ 254a of the Diplomatic Relations Act, and are protected by the Act.

The State Department was notified by the Embassy of Saudi Arabia on April 1, 1982 of Turki's status as "special envoy" for matters concerning the Government of Saudi Arabia. The designation of "special envoy" reflects the designation provided by the sending state. As special envoy Turki was afforded full protection pursuant to the Diplomatic Relations Act. This protection extended to his family, members of his service staff, and servants. *See* 22 U.S.C.A. §§ 254a(1)(C) and 254a(2).

Defendants challenge the manner in which Turki's diplomatic immunity was communicated to the court, arguing that the photocopy of the official documents was insufficient and violated the Federal Rules of Evidence. The courts have the right to accept the certificate of the State Department as to diplomatic status. *In re Baiz*, 135 U.S. 403, 432, 10 S.Ct. 854, 862, 34 L.Ed. 222 (1890); *Carrera v. Carrera*, 174 F.2d 496, 497 (D.C.Cir.1949). In *Carrera* the Ambassador's note was transmitted to the district judge by the legal adviser to the Secretary of State with an enclosed letter from the Secretary. The Court held this communication sufficient. Fed.R.Evid. 1003 allows for the admission of a photocopy, as long as there is no genuine issue as to the authenticity of the original or it would be unfair to admit the duplicate. Neither situation is present here.

■■■ Diplomatic immunity can be waived by continuing to assert a claim while at the same time seeking immunity from a counterclaim. *Cf. National City Banks v. Republic of China*, 348 U.S. 356, 75 S.Ct. 423, 99 L.Ed. 389 (1955). Here, however, immediately after receiving the certificate from the State Department that his papers from Saudi Arabia were properly on file and that he was entitled to immunity, Prince Turki moved to dismiss his action and the counterclaims. Turki's immediate seeking of a dismissal of his own suit forecloses any argument that defend-

ants may have as to waiver. Defendants' argument that plaintiffs' initiation of the suit waived immunity is without merit because at the time the suit was brought his entitlement to immunity was not clear. He could not knowingly waive the benefit of a status to which he was not clearly entitled.

■ There is no merit to defendants' argument that their counterclaims were compulsory and that the suit could not be dismissed under Fed.R.Civ.P. 41(a)(2). The district court was not restricted from dismissing plaintiffs' complaint to preserve the common law tort counterclaims when plaintiff was immune from that suit. The counterclaims were dismissed, not because plaintiffs' suit was dismissed, but because of immunity. Pursuant to 22 U.S.C.A. § 254d and the Senate Report accompanying the Act, the action was properly dismissed when immunity was acquired and the court was so notified.

AFFIRMED.