**James SLATER, Appellant,**

v.

**Gloria BIEHL, Appellee.**

No. 98–CV–1389.

District of Columbia Court of Appeals.

Argued May 5, 2000.
Decided March 21, 2002.

Allan B. Rabineau, Baltimore, MD, for appellant.

David C. Numrych, Washington, DC, with whom Robert G. McGinley, Atlanta, GA, was on the brief, for appellee.

Before TERRY, RUIZ, and WASHINGTON, Associate Judges.

RUIZ, Associate Judge:

James Slater sued Gloria Biehl, the wife of the Ambassador from Chile to the United States, in the Superior Court of the District of Columbia for damages arising from an automobile collision alleged to have been caused by the negligence of Biehl. Biehl answered the complaint denying negligence, and later moved to dismiss for lack of jurisdiction. The trial court dismissed the case pursuant to 28 U.S.C. § 1351(2) (1994 & Supp. IV 1998), which provides that federal "district courts shall have original jurisdiction, exclusive of the courts of the states, of all civil actions and proceedings against ... members of a mission or members of their families." We hold that 28 U.S.C. § 1351 divests the Superior Court of subject matter jurisdic-

tion, a fundamental defect which may not be waived by a litigant who files a general appearance in the Superior Court without first asserting the defense of lack of jurisdiction. Because the plain language of the statute, buttressed by long historical precedent, clearly directs that civil cases against ambassadors or their families must be brought exclusively in the federal district courts, we further hold that, upon the filing of a proper motion, an award of costs and attorneys' fees to appellee is appropriate under District of Columbia Appellate Rule 38 as "just compensation" for having to defend a frivolous appeal.

## FACTS

Slater and Biehl were involved in an automobile accident on February 21, 1995, in the District of Columbia. The automobile Biehl was driving bore diplomatic tags. On February 20, 1998, Slater filed the present civil suit in the Superior Court alleging negligence by Biehl. On March 20, 1998, Biehl filed an answer to Slater's complaint which denied each allegation in the complaint, but did not challenge the court's jurisdiction. On June 4, 1998, the Assistant Chief of Protocol of the United States Department of State issued a Certificate of Diplomatic Status regarding Biehl. Thereafter, on June 18, 1998, Biehl filed a motion to dismiss the case for lack of jurisdiction based on her diplomatic status, referring to the certificate from the State Department. After a hearing on the issue, the trial court dismissed the case for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1351. In a letter dated December 21, 1998, after the case had been dismissed by the Superior Court and Slater had noted his appeal to this court, Biehl's counsel notified Slater's counsel that Biehl would seek sanctions pursuant to District of Columbia Appellate Rule 38 if Slater continued to pursue what Biehl believed to be a frivolous appeal.

## ANALYSIS

### 1. 28 U.S.C. § 1351

The central question in this case is whether 28 U.S.C. § 1351 refers to the subject matter jurisdiction of a state court[1] or merely to such court's personal

---

1. We assume that the District of Columbia is a "state" for the purpose of determining jurisdiction under § 1351. Neither party has contended otherwise. The Supreme Court has held that whether the District "constitutes a 'State or Territory' within the meaning of any particular statutory or constitutional provision depends upon the character and aim of the specific provision involved." *District of Columbia v. Carter*, 409 U.S. 418, 420, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). In *Carter*, the Court set forth several factors to be considered in such a determination including "the words [of the statute] themselves ... context, the purposes of the law, and the circumstances under which the words were employed." *Id.* at 420, 93 S.Ct. 602 (citing *Puerto Rico v. Shell Co., Ltd.*, 302 U.S. 253, 258, 58 S.Ct. 167, 82 L.Ed. 235 (1937)). The Court ultimately held that, for the purposes of 42 U.S.C. § 1983, the District was not a "state" because the primary purpose of the Klu Klux Klan Act of 1871, from whence the

statute was derived, was "to enforce the Provisions of the Fourteenth Amendment," *id.* at 423, 93 S.Ct. 602 and "neither the District nor its officers [were] subject to [the Fourteenth Amendment's] restrictions." *Id.* at 424, 93 S.Ct. 602. As for the purpose of the fair housing standards of 42 U.S.C. § 1982, however, the Court determined that the District was a "state" as that statute was not " 'a mere prohibition of State laws establishing or upholding' racial discrimination in the sale or rental of property but, rather, an 'absolute' bar to all such discrimination, private as well as public, federal as well as state." *Id.* at 422, 93 S.Ct. 602 (quoting *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 437, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968)). In this case, as to jurisdiction over actions against foreign consuls and members of their families, we are also of the mind that "it would be anomalous indeed if Congress chose to carve out the District of Columbia as the sole exception to

jurisdiction over a diplomat. Slater argues that the statute concerns only personal jurisdiction and that Biehl waived the defense of lack of personal jurisdiction by failing to timely raise it in her first pleading. Because "[t]he issue of subject matter jurisdiction is a question of law," *Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith of Washington, D.C. v. Beards*, 680 A.2d 419, 427 (D.C.1996), our standard of review is *de novo*.

■■■ It is axiomatic that in order to act a court must have jurisdiction over both the person and the subject matter. Personal jurisdiction is not "fundamentally preliminary in the sense that subject-matter jurisdiction is, for [personal jurisdiction is a] personal privilege[] of the defendant, rather than [an] absolute stricture[] on the court." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). "Challenges to a court's subject matter jurisdiction cannot be waived," *Arrington v. United States*, 585 A.2d 1342, 1344 n. 2 (D.C.1991); Super. Ct. Civ. R. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action."), whereas a failure to plead lack of personal jurisdiction by motion or responsive pleading results in waiver of the defense, *see* Super. Ct. Civ. R.

12(h)(*l*) ("A defense of lack of jurisdiction over the person . . . is waived . . . (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course."). As a court of general jurisdiction, " 'the Superior Court has jurisdiction of any civil action or other matter (at law or in equity) brought in the District of Columbia' unless jurisdiction is vested exclusively in a federal court." *Begum v. Auvongazeb*, 695 A.2d 112, 113 (D.C.1997) (quoting D.C.Code § 11–921(a) (2001)).

■■■ The statute at issue, 28 U.S.C. § 1351, provides that

The district courts shall have original jurisdiction, *exclusive of the courts of the States*, of all civil actions and proceedings against—

(1) consuls or vice consuls of foreign states; or

(2) members of a mission or members of their families (as such terms are defined in section 2 of the Diplomatic Relations Act [22 U.S.C. § 254a] ).

(Emphasis added).[2] "When the language of a statute is plain and unambiguous, we look to its plain meaning in order to interpret it." *Needle v. Hoyte*, 644 A.2d 1369, 1372 (D.C.1994). The plain language of § 1351 confers jurisdiction to the federal courts, "exclusive of the courts of the

an act of otherwise universal application." *Id; see also Silverman v. Barry*, 234 U.S.App. D.C. 22, 25, 727 F.2d 1121, 1123 n. 4 (1984) (noting that the court would assume, as it had on other occasions, that because the District of Columbia resembles a state, "the abstention rules apply in the District with the same force as they do where a state sovereign is involved"); *Ford v. Tait*, 163 F.Supp.2d 57, 64 (D.D.C.2001) (holding that the District of Columbia qualifies as a state for the purpose of applying comity doctrines).

**2.** This language is similar to that of other statutes giving exclusive subject matter juris-

diction to the federal courts. *See, e.g.*, 28 U.S.C. § 1338 (patent and copyright) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases."); 28 U.S.C. § 1333 (admiralty) ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction. . . .").

States," over certain civil cases,[3] *i.e.* civil cases brought against certain persons, among them the family members of members of a diplomatic mission. *See* 28 U.S.C. § 1351(2). "The exclusion is expressed in strong and unqualified terms" and does not countenance a qualified interpretation. *Ketland v. The Cassius*, 2 U.S. 365, 368, 2 Dall. 365, 1 L.Ed. 418 (1796) (interpreting similar language of Judiciary Act of 1789); *see Tafflin v. Levitt*, 493 U.S. 455, 471, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990) (Scalia, J., concurring) (noting that the term "exclusive of the courts of the states" signals exclusive federal jurisdiction over a matter and referencing 28 U.S.C. § 1351). The supremacy of federal law dictates that the Superior Court is without subject matter jurisdiction over civil claims covered by 28 U.S.C. § 1351. *See* U.S. CONST. art. VI ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land"); D.C.Code § 11–921 (2001) (b) ("The Superior Court does not have jurisdiction over any civil action or other matter (1) over which exclusive jurisdiction is vested in a Federal court"); *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23 (1824) (Marshall, C.J.) (explaining that the Supremacy Clause invalidates state laws that "interfere with, or are contrary to" federal law); *Begum*, 695 A.2d at 113 (noting jurisdiction under § 11–921 of any civil action matter brought in the District

of Columbia unless jurisdiction is vested exclusively in a federal court).

 It is also clear that Biehl is a "member of the[] family" of a member of a diplomatic mission for purposes of § 1351. The United States Department of State issued a Certificate of Diplomatic Status establishing Biehl's status as a family member of a diplomat. Courts generally accept as conclusive the views of the State Department as to the fact of diplomatic status. *See Carrera v. Carrera*, 84 U.S.App. D.C. 333, 174 F.2d 496, 497 (1949). Under 22 U.S.C. § 254 a(2), which is specifically referenced in § 1351, the term "family" means "the members of the family of a member of a mission ... who form part of his or her household if they are not nationals of the United States ... within the meaning of Article 37 of the Vienna Convention." Article 37 of the Vienna Convention on Diplomatic Relations provides that "[t]he members of the family of a diplomatic agent forming part of his household shall, if they are not nationals of the receiving state, enjoy the privileges and immunities specified...." Vienna Convention on Diplomatic Relations, April 18, 1961, art. 37(1), 23 U.S.T. 3227, 3244, 500 U.N.T.S. 96, 116 ("Vienna Convention") (entered into force with respect to the United States on December 13, 1972). "A 'diplomatic agent' is the head of the mission or a member of the diplomatic staff of the mission." *Id.*, art. 1(e), 23 U.S.T. at 3231, 500 U.N.T.S. at 98. Heads of mission are divided into three classes,

---

**3.** The Supreme Court has decided that the grant of exclusive jurisdiction over "civil actions" in 28 U.S.C. § 1351 does not extend to domestic relations matters over which the federal courts do not otherwise have jurisdiction. *See Ohio ex rel. Popovici v. Agler*, 280 U.S. 379, 382–383, 50 S.Ct. 154, 74 L.Ed. 489 (1930) (provisions granting the federal district courts original jurisdiction, exclusive of the courts of the several states, over all suits

against consuls and vice-consuls, should not be construed as granting to the District Court or denying to the state courts, jurisdiction over suits for divorce and alimony); *see also Kita v. Matuszak*, 21 Mich.App. 421, 175 N.W.2d 551, 553 (1970) (federal jurisdiction of cases against foreign consuls exclusive "with the exception of actions for divorce and alimony").

and include ambassadors. *Id.*, art. 14(1)(a), 23 U.S.T. at 3235, 500 U.N.T.S. at 104. Thus, 28 U.S.C. § 1351 is clearly applicable to a civil action against Biehl, the wife of the Chilean Ambassador. Her failure to plead lack of jurisdiction in the first instance cannot invest the Superior Court with subject matter jurisdiction which, under federal statute, is exclusive to the federal district courts.[4] *See* U.S. CONST. art. VI.; *Bors v. Preston,* 111 U.S. 252, 255–256, 4 S.Ct. 407, 28 L.Ed. 419 (1884) (failure to raise court's jurisdiction in the first instance cannot "invest those courts with a jurisdiction expressly denied them").

In addition to the plain language of 28 U.S.C. § 1351, there is a long history of exclusive federal jurisdiction over cases against consuls. *See generally Foxgord v. Hischemoeller,* 820 F.2d 1030, 1034–36 (9th Cir.1987) (outlining history of 28 U.S.C. § 1351). For over two hundred years, from almost the beginning of the Republic, the legislative grant of exclusive jurisdiction to federal district courts over consuls (and now also over family members of members to diplomatic missions) has been couched in essentially similar terms. Section 9 of the Judiciary Act of 1789, enacted by the first Congress, provided in pertinent part "That the district courts ... shall also have jurisdiction exclusively of the courts of the several States, of all suits against consuls or vice-consuls, except for [certain] offenses...." Act of Sept. 24, 1789, ch. 20, § 9, 1 Stat. 73, 76–77. The then newly-created federal district courts had concurrent jurisdiction with the Supreme Court over cases involving foreign consuls. *See id.* at ch. 20, § 13, 1 Stat. 73, 80–81. "Under these provisions it remained the accepted law until 1875, that the federal courts had exclusive jurisdiction of offenses by [or cases against] consuls, whether at common law or under state or United States statutes." *In re Iasigi,* 79 F. 751, 753 (S.D.N.Y.1897). *See also Froment v. Duclos,* 30 F. 385, 385 (S.D.N.Y.1887) ("[T]he jurisdiction of the federal courts over consuls and vice-consuls has always been exclusive of the state courts from the passage of the judiciary act of 1789 (1 Stat. at Large, 76) until the [act] of February 18, 1875."). In 1874, Section 9 was codified without substantial

---

**4.** Slater also argues that because diplomatic immunity does not extend to "professional and commercial activity" outside official diplomatic functions, *see* Vienna Convention, art. 31(1)(c), 23 U.S.T. at 3240, 500 U.N.T.S. at 112, a remand is necessary for a factfinding hearing to determine whether Biehl was involved in professional and commercial activity at the time of the accident. This argument does not address the threshold question of the court's jurisdiction. Even were Biehl involved in professional or commercial activity at the time of the accident, a suit against Biehl would still have to be maintained in federal court, which would be the proper tribunal to consider the efficacy of any immunity claim that Biehl might raise. *See* 22 U.S.C. § 254d ("Any action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations ... shall be dismissed."). Were a

federal court to determine that at the time of the accident Biehl was involved in activity that is not immune from suit, the suit would go forward in federal court.

Slater additionally argues that 28 U.S.C. § 1351 is not jurisdictional in nature, but intended to facilitate removal. 28 U.S.C. § 1351 indeed facilitates removal, but only as a by-product of federal question jurisdiction. Because 28 U.S.C. § 1351 is a grant of original jurisdiction to the federal district courts, a claim against a diplomat can be heard in federal court under the federal question jurisdiction statute, *see* 28 U.S.C. § 1331, and is therefore removable, *see* 28 U.S.C. § 1441. Under 28 U.S.C. § 1441(e) a case can be removed to federal court, rather than dismissed, even though the state court lacked jurisdiction over the claim as originally filed. Here Biehl moved to dismiss the case, not remove it to federal court.

change as section 711(8) of the Revised Statutes of the United States (enacted June 22, 1874), which provided federal jurisdiction "exclusive of the state courts" over "all suits or proceedings against ambassadors, or other public ministers, or their domestics, or domestic servants, or against consuls or vice consuls." In 1875, an act entitled "An act to correct errors and supply omissions in the Revised Statutes of the United States," with the purpose of insuring that the Revised Statutes "truly express[ed]" the laws in force on December 1, 1873, repealed paragraph 8 of section 711 of the 1874 act without explanation, *see* 18 Stat. 316, 318, thus creating a situation of concurrent federal and state jurisdiction over suits against consuls and vice consuls. *See Bors,* 111 U.S. at 261, 4 S.Ct. 407 (noting that after "the Revised Statutes of the United States went into operation ... by existing law, there [was] no statutory provision which, in terms, ma[de] the jurisdiction of the United States exclusive of the State courts in suits against consuls or vice consuls"); *Deleon v. Walter,* 163 Ala. 499, 50 So. 934, 935 (1909) ("[T]he state courts now have jurisdiction to hear and determine cases, in civil matters, although the defendant may be a consul general of a foreign power.")

Exclusive federal jurisdiction over cases against consuls was reinstated in 1911, *see* Act of March 3, 1911, 36 Stat. 1087, 1093, 1160, in order to "correct[] a mistake of omission on the part of Congress on the occasion of the former [1875] revision." 46 Cong. Rec. 1538 (1911) (statement of Sen. Heyburn); *see also* 14A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3662.1, at 233 n. 1 (3d ed.1998) (noting that "[b]etween 1875 and 1911 the federal courts' jurisdiction was not exclusive of the states"). In 1948, Title 28 of the United States Code, including § 1351, was enacted. *See* Pub.L. No. 773, 62 Stat. 869, 934 (1948). At that time, 28 U.S.C.

§ 1351 provided that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of any civil action against consuls or vice consuls of foreign states." Congress amended § 1351 in 1978 to include "members of a mission or members of their families (as such terms are defined in section 2 of the Diplomatic Relations Act)." *See* Pub.L. No. 95–393, 92 Stat. 810 (1978). The foregoing history, including the span of thirty-six years during which state and federal courts did have concurrent subject matter jurisdiction over cases against consuls, belies any argument that § 1351 refers to personal jurisdiction.

The Supreme Court regularly interpreted the exclusivity language contained in the Judiciary Act of 1789, which has remained basically unchanged in § 1351, to provide that "cases against consuls and vice consuls, except for certain offences, *are placed from their commencement* exclusively under the cognizance of the Federal courts." *Railway Co. v. Whitton's Adm'r,* 13 Wall. 270, 80 U.S. 270, 288, 20 L.Ed. 571 (1871) (emphasis added) (quoting *The Moses Taylor,* 4 Wall. 411, 71 U.S. 411, 430, 18 L.Ed. 397 (1866)); *see also United States v. Ortega,* 11 Wheat. 467, 24 U.S. 467, 473, 6 L.Ed. 521 (1826) ("[N]o civil suit or criminal prosecution can be commenced *against* a ... consul, in any State court."); *Ketland,* 2 U.S. at 368–369 (noting exclusive jurisdiction in the federal district courts over suits against consuls and stating "[w]herever, indeed, a qualified exclusion is intended, the expression of the legislature corresponds with that intention"). In *Davis v. Packard,* 32 U.S. 276, 7 Pet. 276, 8 L.Ed. 684 (1833), the Court held that as Consul General of the King of Saxony, Davis, who had raised the issue for the first time on appeal, was exempt from being sued in state court. 32 U.S. at 281, 284. The Court, interpreting the Judiciary Act of 1789, noted that diplomatic

privilege against suit in state court is not personal to the diplomat, but belongs to the sovereign state that the diplomat represents:

[I]f the question was open for consideration here, whether the privilege claimed was not waived by omitting to plead it in the supreme court, we should incline to say it was not. If this was to be viewed merely as a personal privilege, there might be grounds for such a conclusion, but it cannot be so considered. It is the privilege of the country or government which the consul represents. This is the light in which foreign ministers are considered by the law of nations, and our constitution and law seem to put consuls on the same footing in this respect.

If the privilege or exemption was merely personal, it can hardly be supposed that it would have been thought a matter sufficiently important to require a special provision in the constitution [5] and laws of the United States. *Higher considerations of public policy doubtless led to the provision. It was deemed fit and proper that the courts of the government, with which rested the regulation of all foreign intercourse, should have cognizance of suits against the representatives of such foreign governments.*

*Id.* at 284 (emphasis added). Likewise, in *Bors* the Court reiterated that "the exemption of the consul of a foreign government from suit in particular courts, is the privilege, not of the person who happens to fill that office, but of the state or government he represents." 111 U.S. at 256, 4 S.Ct.

407; *see also Miller v. Van Loben Sells*, 66 Cal. 341, 5 P. 512, 512 (Cal.1885) ("[A] personal privilege may be waived, but exemption or immunity by virtue of official character from liability to be sued in certain courts is not a personal privilege; it is a question of jurisdiction."); [6] *McKay v. Garcia*, 16 F. Cas. 175, 175 (S.D.N.Y.1873) (the "state court was and is without jurisdiction of the suit, as the defendant was and is a foreign consul"); *Valarino v. Thompson*, 7 N.Y. 576, 580 (N.Y.1853) ("The defendant ... is exempted as a consul from liability to be sued in the state courts."); *Sartori v. Hamilton*, 13 N.J.L. 107, 108 (N.J.1832) ("If the act of Congress be of any authority, it takes away the jurisdiction of the justice, and of this court likewise, over a consul. Its words are these; 'The District Court of the United States, shall have jurisdiction, exclusively of the courts of the several states, of all suits against consuls.' These words exclude state courts from civil jurisdiction over foreign consuls." (internal citation omitted)).

Consistent with the Court's interpretation of the Judiciary Act of 1789, 28 U.S.C. § 1351 has been interpreted as giving exclusive subject matter jurisdiction to the federal district courts of suits against consuls, *see Kita v. Matuszak*, 21 Mich.App. 421, 175 N.W.2d 551, 553 (1970) ("It is the holding of this Court that 28 U.S.C 1351 grants exclusive jurisdiction to the Federal courts in all cases affecting foreign consuls and vice-consuls and a state court can in no case claim jurisdiction of civil actions against foreign consuls...."); *Pappas v. Francisci*, 119 N.Y.S.2d 69, 70 (App.Div.

---

**5.** The Constitution grants to the federal courts jurisdiction over all cases affecting ambassadors, other public ministers and consuls, *see* Art. III, § 2, cl. 1, and vests the Supreme Court with original jurisdiction in cases affecting consuls, *see* Art. III, § 2, cl. 2.

**6.** The Supreme Court of California, relying on the provisions of the Judiciary Act of 1789, went on to hold that the state court had no jurisdiction over the defendant, consul of the republic of Paraguay, apparently not recognizing that in 1875 the exclusivity of federal jurisdiction over consuls had been repealed.

1953) ("Section 1351, Title 28 of the United States Code, vests original and exclusive jurisidiction of all actions and proceedings against consuls or vice-consuls of foreign states in the United States District Courts"); *see also* JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 105.50[1] (3d ed.2001) ("consul may not usually be sued in state court"), and against family members of members of a diplomatic mission, *see MHM Sponsors Co. v. Permanent Mission of Pakistan to the United Nations,* 672 F.Supp. 752, 754 (S.D.N.Y.1987) ("[U]nder 28 U.S.C. § 1351, jurisdiction over the occupants of the apartment [who were members of the Permanent Mission of Pakistan to the United Nations and their families] lies only in the district court and not in the state court from which this action was removed.").

Slater musters scant authority in support of his argument that the grant of exclusive jurisdiction in 28 U.S.C. § 1351 may be waived. Three of the cases he cites, *Abdulaziz v. Metropolitan Dade County,* 741 F.2d 1328 (11th Cir.1984),[7] *Holloway v. Walker,* 800 F.2d 479 (5th Cir.1986),[8] and *Herman v. Apetz,* 130 Misc. 618, 224 N.Y.S. 389 (N.Y.Sup.Ct.1927),[9] are

---

**7.** In *Abdulaziz,* a case filed in the federal court in the first instance, the court considered the question "whether a certificate of diplomatic status granted after the commencement of a suit supports dismissal of the suit based on diplomatic immunity." 741 F.2d at 1329. The court answered in the affirmative, holding "that once the United States Department of State has regularly certified a visitor to this country as having diplomatic status, the courts are bound to accept that determination, and that the diplomatic immunity flowing from that state serves as a defense to suits already commenced." *Id.* at 1329–30. Although Slater relies on dicta in which the court suggests that "[d]iplomatic immunity may be waived by continuing to assert a claim while at the same time seeking immunity from a counterclaim," *id.* at 1331, this language fails to speak to the jurisdictional question before us, which must be decided prior to any determination of whether Ms. Biehl has diplomatic immunity, a decision that must be made by a tribunal with the jurisdiction to do so.

**8.** *Holloway* was an appeal from a district court's decision denying Holloway's claim of diplomatic immunity. The district court had been presented with "documentary proof from the Department of State, the Bolivian Embassy in Washington, D.C., and the Consul General in Houston, Texas attesting the termination of Holloway's former [diplomatic] status." 800 F.2d at 481. The Fifth Circuit affirmed the district court's denial of immunity. Alternatively, the court held that Holloway's "honorary, superannuated connection of local convenience with Bolivia does not accord an ordinary businessman diplomatic immunity from civil litigation." *Id.* The circuit court's *second* alternative holding, the holding on which Slater relies, was that "if Holloway was ever entitled to plead diplomatic immunity in the courts of the State of Texas, this right was waived by his action in withholding such plea until the unsuccessful termination of such litigation." *Id.* This alternative holding says nothing of the Texas state court's jurisdiction to entertain a case against Holloway's case in the first instance, only that he could not claim diplomatic immunity from suit after the state court had entered final judgment against him.

**9.** In *Herman v. Apetz,* 130 Misc. 618, 224 N.Y.S. 389, 390 (N.Y.Sup.Ct.1927), the court held that the wife of a diplomat need not have the consent of the sending state in order to waive her immunity, and that she had in fact done so by making a general appearance in the case. Notwithstanding the case's irrelevance to our consideration of the present matter, the holding of *Apetz* has been abrogated by Article 32(1) and (2) of the Vienna Convention which provides that diplomatic immunity can be waived only by express written waiver of the diplomat's state. *See* Vienna Convention, art. 32, 23 U.S.T. at 3241, 500 U.N.T.S. at 112. This Article extends to "all persons enjoying immunity under Article 37," *id.,* a group which under Article 37(1) includes family members such as Biehl. *Id.,* art. 37(1), 23 U.S.T. at 3244, 500 U.N.T.S. at 116 (members of the family of a diplomatic agent enjoy diplomatic immunity). *See In re Grand Jury Proceedings,* 817 F.2d 1108, 1111 (4th Cir.

inapposite, each dealing with the waiver of diplomatic *immunity from suit* rather than the jurisdiction of a particular court to hear a case against a defendant with diplomatic status. See *supra* note 4. In the fourth case relied on by Slater, *Gonzalez v. Wagner*, 64 F.Supp. 737 (S.D.Tex. 1946), the federal district court refused to enjoin a final state court judgment of eviction against a vice-consul, holding that the consul, "not having plead immunity from suits in the State Court ... and having agreed that [the state court] judgment should be rendered and entered against him," had submitted himself to the jurisdiction of the state court. 64 F.Supp. at 738. We believe the position taken in *Gonzalez* cannot be squared with the Supreme Court's reasoning that the privilege from being sued in state court is jurisdictional in nature and is not personal to the diplomatic agent but derives from the status of being a diplomat of the sending state. *See Davis*, 32 U.S. at 284 (state court lacked jurisdiction despite the fact that consul did not raise court's lack of jurisdiction until appeal). Likewise, in *Bors*, the Court gave no credence to the argument that

> the defendant did not in the court below plead exemption, by virtue of his official character, from suit in a Circuit Court of the United States.[10] To this it is sufficient to reply that this court must, from its own inspection of the record, determine whether a suit against a person holding the position of consul of a foreign government is excluded from the jurisdiction of the Circuit Courts.... If this were not so it would be in the power of the parties by negligence or design to invest those courts with a jurisdiction expressly denied to them.

111 U.S. at 255, 4 S.Ct. 407.[11]

## 2. Fees and Costs Under District of Columbia Appellate Rule 38

Biehl urges us to award fees and costs to compensate her for expenses incurred in defending a meritless appeal. Rule 38 of the District of Columbia Court of Appeals provides that "[i]f this court shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." In *Tupling v. Britton*, 411 A.2d 349, 352 (D.C.1980), we noted that "[f]rivolous appeals waste the time and resources of this court, delay the hearing of cases with merit and cause appellees unwarranted delay and added expense." We cautioned that "[p]roper representation of one's client does not include the blind prosecution of appeals without objective appraisal of merit ... merely because the client insists they do so or seems willing to pay to keep the controversy alive." *Id.* We therefore "ma[d]e clear that the filing of a frivolous appeal may result in the appellant being assessed just damages in the form of appellee's attorney's fees and other reasonable expenses an appellee

---

1987). We note that, to the extent that the suit in *Apetz* was "a real action relating to private immovable property situated in the territory of the receiving state," in a similar case there may now be no diplomatic immunity under Article 31(1)(a) of the Vienna Convention. *See* Vienna Convention, art. 31(1)(a), 23 U.S.T. at 3240, 500 U.N.T.S. at 112.

**10.** Under the Judiciary Act of 1789 exclusive jurisdiction of cases against consuls was with the federal district courts, not the circuit courts.

**11.** We express no opinion on whether the Superior Court may be divested of jurisdiction properly acquired when the defendant is subsequently appointed to a consular office or becomes a family member of a diplomatic agent prior to conclusion of the proceedings. *See Earle v. DeBesa*, 109 Cal.App. 619, 293 P. 885, 886 (1930).

may incur because of the frivolous appeal."
*Id.*

■■■ A frivolous appeal has variously been described by this court as one that is "wholly lacking in substance," *Pine View Gardens, Inc. v. Jay's Frosted Foods, Inc.,* 299 A.2d 536, 537 (D.C.1973), an appeal not "based upon even a faint hope of success on the legal merits of the appeal," *id.* (quoting *United States v. Certain Land in Squares,* 153 U.S.App. D.C. 383, 384, 473 F.2d 94, 95 (1972)), or an appeal "utterly without merit," *Tupling,* 411 A.2d at 351 n. 4.[12] Although there is no indication that this appeal was "interposed for delay," *id.* at 354, or brought in bad faith, that does not necessarily mean that it is not frivolous on the merits. We reiterate our admonition in *Tupling,* that "[a]s professionals and officers of this court, members of the District of Columbia bar have the obligation to exercise their independent professional judgment to determine whether a civil appeal is frivolous before filing one." *Id.* at 352. Similarly, if it becomes clear to counsel after filing an appeal that the appeal is "utterly without merit," or lacks "even a faint hope of success on the legal

merits," it is counsel's responsibility to discontinue prosecution of the appeal.

■■■ Notwithstanding the fact that jurisdictional questions can sometimes be complex, this is not such a case. Although we have not previously had occasion to rule on the question before us, that is likely because the plain language and long history preceding 28 U.S.C. § 1351 could not be clearer that subject matter jurisdiction of civil suits against diplomats is vested exclusively in the federal district courts. The lone district court case that Slater presents in support of his position, *Gonzalez v. Wagner, supra,* does not follow Supreme Court jurisprudence that the federal courts have exclusive subject matter jurisdiction over civil suits against diplomats and differs factually from this case in significant respects. The State Department's certification of Biehl's diplomatic status was unequivocal, and Slater does not contest it. Slater was warned by letter of Biehl's intention to seek attorneys' fees and costs under Rule 38 if Slater did not dismiss the appeal, and yet Slater persisted.[13] Under these circumstances, we

12. Although "the assessment of costs and damages against parties who file frivolous appeals is a well-established practice," *Tupling,* 411 A.2d at 352, there is a paucity of published opinions by this court invoking Rule 38 because such issues are normally resolved via motions. *See Burleson v. American Sec. Bank,* 461 A.2d 458, 459 (D.C.1983) (awarding $500 for expenses); *Beverly Court Coop., Inc. v. Owens,* 450 A.2d 896, 896 (D.C. 1982) (awarding $25 docketing fee as costs); *Tupling,* 411 A.2d at 354 (awarding single costs); *Tolson v. Handley,* 304 A.2d 634, 635 (D.C.1973) (awarding double costs); *Pine View Gardens,* 299 A.2d at 537 (awarding costs and $100 reimbursement for attorneys' fees). *But see Parsons v. Mains,* 580 A.2d 1329, 1331 n. 4 (D.C.1990) (attorneys' fees inappropriate given the few cases construing the statute at issue); *Williams v. Ray,* 563 A.2d 1077, 1081 (D.C.1989) (holding that

"[b]ecause the appeal is not entirely frivolous, sanctions are not appropriate").

13. At oral argument Slater's counsel contended that an award of costs and attorneys' fees would be inequitable because Biehl's brief mentions a "three panel judge [sic] advisory ruling in this case," which by implication can be understood to have ruled against Slater's position. We also note that Biehl's brief attaches a letter from her counsel to Slater's counsel that refers to a "Neutral Case Evaluation" concluding that Slater had "presented no controlling authority or persuasive authority of why the trial court's dismissal Order concerning lack of subject matter jurisdiction over a diplomat was in error." The letter is not part of the record on appeal and should not have been attached to appellee's brief. In addition, to the extent that the references in the letter and in the brief are to matters addressed in the Settlement Conference held

are constrained to say that in this case "[n]o reasonable person given *professional* legal advice could have rationally believed that there was any likelihood of success on appeal," *Beverly Court Coop. Inc.*, 450 A.2d 896, 896 (D.C.1982) (Newman, C.J., dissenting), nor do we think that a member of the bar acting as an officer of the court should have continued to prosecute this appeal. Therefore, we conclude that attorneys' fees and costs under Rule 38 are appropriate in this case. Given the increasing backlog of cases, "[o]ur failure to impose appropriate sanctions to discourage frivolous appeals ... is ... a defalcation of our responsibility." *Id.*

*Affirmed.*

by Senior Judge John Kern pursuant to our Rule 7A, such matters are "privileged and confidential" unless contained in a settlement conference order. *See* D.C.App. R. 7A (h). We are mindful that "he who comes into equity must come with clean hands," *Burnette v. Void*, 509 A.2d 606, 608 (D.C.1986), and

have no doubt it was improper for Biehl to reveal that an advisory ruling had been issued and the outcome of that ruling. Nevertheless, our evaluation of the merits of the appeal is based on the overwhelming authority we cite and is in no way influenced by the Settlement Conference.