**Gerald WEAVER and Katherine Brewer, Appellants,**

v.

**Sai GRAFIO, Appellee.**

No. 90–808.

District of Columbia Court of Appeals.

Argued May 6, 1991.

Decided Aug. 9, 1991.

---

Gerald Weaver and Katherine Brewer, pro se.

Alan Dumoff, Washington, D.C., for appellee.

Before ROGERS, Chief Judge, STEADMAN and FARRELL, Associate Judges.

ROGERS, Chief Judge:

Appellants Gerald Weaver and Katherine Brewer brought this suit against appellee Sai Grafio for breach of contract, defamation, and intentional infliction of emo-

tional distress. The trial judge granted Grafio's motion for dismissal and summary judgment on the grounds that the breach of contract claim was barred by *res judicata* and that appellants had failed to raise a genuine issue of material fact on the remaining claims. We affirm.

## I.

Appellee Sai Grafio, a professional housepainter, agreed to paint appellants'[1] house for $5,650. The parties' contract provided that payments were to be made in three installments, with the final installment of $1,845 to be paid when the work was completed. Prior to this time, however, appellants began to raise questions about the quality of Grafio's work. The parties' relationship continued to deteriorate, and when the final payment was due, appellants paid with a check on which they had placed a stop payment order.

Grafio sued appellants in the Small Claims Branch of the Superior Court for the final $1,845 owed on the contract. Appellants filed a separate suit in the Civil Division against Grafio for breach of contract, fraudulent misrepresentation and property damage, consisting of Grafio's failure to obtain a smooth finish on the painted surface. Appellants alleged that the paint job appeared lumpy and that the paint peeled, and ascribed these problems to Grafio's failure to properly sand and spackle the surface of the house before painting. They also alleged that Grafio had left trash in their yard and footprints in the paint on their roof. Appellants later amended their complaint, adding claims of defamation and intentional infliction of emotional distress. According to the amended complaint, Grafio sent appellants a copy of a letter that he had sent to the Bar Ethics Committee of the D.C. Bar accusing appellants of a felony for knowingly passing a bad check.

At the start of the Small Claims action, appellants moved to consolidate the two lawsuits. Grafio opposed the motion and it was denied by the Hearing Commissioner. Following a two-day trial in the Small Claims Branch, Judge Levie ruled that Grafio had substantially performed his contract to paint appellants' house. The judge found that Grafio had warned appellants that their house, which was extremely old, was difficult to paint and that rotten boards and the many previous coats of paint would make it almost impossible to create a smooth finish. He credited the testimony of Grafio's expert that the paint job was as good as could be expected under such conditions. He further stated that he had examined photographs of the alleged damage to appellants' property and concluded that Grafio was responsible only for a single footprint on the roof. Thus, the judge awarded Grafio $1,845 less $50 as a setoff to pay for the cost to appellants of removing the footprint.

Appellants filed a motion to reconsider or to reopen the record, claiming that they were surprised by Judge Levie's ruling on the question of setoff, and that because they had not expected him to reach that issue, they had failed to present all the evidence in support of their damages claim. Judge Levie denied the motion on the grounds that appellants had an ample opportunity to present evidence of property damage as a defense to Grafio's contract claim and could have contested Grafio's testimony that the cost of fixing the footprint was approximately $50.

Grafio thereafter moved for dismissal of appellants' breach of contract claim in the Civil Division, on the grounds that it was barred by *res judicata*, for summary judgment on the defamation and intentional infliction of emotional distress claims, and for sanctions under Super.Ct.Civ.R. 11. In his Super.Ct.Civ.R. 12–I(k) statement, Grafio asserted that the letter he had sent to the Ethics Committee was privileged and, although the letter showed a "cc:" to Channel 7, he denied publication of the letter to Channel 7. Appellants opposed the motion and, in the alternative, requested leave to amend further their complaint to refer to the letter being sent to Channel 7; in their Rule 12–I(k) statement, appellants disputed

1. Appellants, two attorneys proceeding pro se, are husband and wife.

that Grafio had not sent the letter to Channel 7, noting the admission on the letter in the form of the "cc:" and his admission that he had sent the letter to the other two "cc:"s noted on the letter. Grafio, in reply, submitted an affidavit to the effect that the letter, which formed the basis for the defamation and intentional infliction of emotional distress claims, was never sent to Channel 7. Judge Bacon granted the motion to dismiss appellants' complaint on the grounds that all of the issues in the breach of contract claim were litigated or should have been litigated in the Small Claims suit brought by Grafio, and that Grafio was entitled to judgment as a matter of law on the remaining claims since there were no genuine issues of material fact. The remainder of the order set a date for argument on the issue of whether sanctions should be imposed.

## II.

A threshold issue is whether the court has jurisdiction to review Judge Bacon's order. *See* Super.Ct.Civ.R. 54(b) (1990); *Customers Parking, Inc. v. District of Columbia,* 562 A.2d 651, 654 (D.C.1989) ("lack of subject matter jurisdiction can be raised any time, even by this court itself, *sua sponte* "). Although the order dismissed appellants' complaint in its entirety, Grafio's motion for sanctions under Rule 11 remains unresolved. Ordinarily the court will review only those orders which decide all of the issues in a case. *Jones v. American Express Co.,* 485 A.2d 607, 609 (D.C.1984) (noting that "strict compliance with Rule 54(b) is an absolute necessity"); *McDiarmid v. McDiarmid,* 594 A.2d 79, (D.C.1991) (dismissing as nonfinal an order proposing a "hypothetical" or "tentative" distribution of marital property). The Supreme Court has held, however, in an analogous context, that a judgment disposing of the "merits," leaving only the question of attorney's fees, is a final appealable order. *Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). The Court reasoned that the finality rule should focus on "a practical approach," not on "the preservation of conceptual consisten-

cy." *Id.* at 202, 108 S.Ct. at 1721. Because the request for attorneys' fees raises issues that are, for all practical purposes, " 'collateral to' and 'separate from' the decision on the merits," *id.* at 200, 108 S.Ct. at 1720, the Court held that the order disposing of the merits was immediately appealable.

Similar reasoning persuades us that an order disposing of all issues except Rule 11 sanctions should be treated as immediately appealable. As with attorney's fees, a motion for sanctions under Rule 11 raises issues that "are not tied to the outcome of litigation; the relevant inquiry is whether a specific filing was, if not successful, at least well founded." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* — U.S. ——, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991). We agree with the conclusion of the United States Court of Appeals for the Seventh Circuit that the reasoning of *Budinich* applies with equal force to a pending Rule 11 motion:

> [A trial] courts' intentional deferral of action on a motion for [Rule 11] sanctions, when it enters a judgment definitely and completely disposing of the underlying action, constitutes a determination on the part of the [trial] court that its disposition of the motion for sanctions will not impact upon its resolution of the underlying litigation. Under these circumstances, a "practical approach" to the matter of finality counsels that we not defer consideration of the merits until the [trial] court addresses the matter of sanctions.

*Cleveland v. Berkson,* 878 F.2d 1034, 1036 (7th Cir.1989); *see also Bogney v. Jones,* 904 F.2d 272, 273 n. 1 (5th Cir.1990) (a "notice of appeal was not filed until after the district court entered its sanction award, and was thus too late to pertain to the court's earlier decision on the merits").

Accordingly, we hold that the court has jurisdiction to entertain this appeal even though the trial judge has not yet ruled on the pending motion for sanctions under Rule 11.

### III.

■ Judge Bacon dismissed appellants' breach of contract claim as barred by issue preclusion: the issues raised had already been conclusively decided against appellants in the Small Claims action.[2] Appellants contend that the Small Claims action determined only that Grafio substantially performed the contract, and did not determine whether he should be held responsible for breach of the contract. To the extent Judge Bacon made findings relevant to the setoff, appellants claim that these rulings were unnecessary, and that they were surprised by them. Appellants' contentions are unpersuasive.

■ The doctrine of substantial performance is a "rule of recovery that the contractor has a right to the contract price, less compensatory damages for the injury caused by his breach." 3A CORBIN ON CONTRACTS § 709 at 334–35 (1960); *see also Matthew A. Welch & Sons, Inc. v. Bird,* 193 A.2d 736, 738–39 (D.C.1963) ("a contractor is entitled to recover the contract price less compensatory damages for any injuries found to be due to defective or incomplete work"). In the Small Claims action appellants asserted the defense that Grafio had breached the contract in a material fashion. For example, as Judge Levie recounted in his opinion and order denying appellants' motion to reopen the record,[3] "[i]n the direct examination of [Grafio], [appellants] raised the issue of footprints purportedly left on the roof by [Grafio] and his workers during the course of painting the roof." On questioning by the judge, Grafio estimated that the cost of repairing the

footprint was $50. Grafio also testified that he chose not to sand the roof of the house before painting it, despite the contractual provision requiring him to "scrape, sand, dust roof before painting," because the roof did not need sanding. Although appellants did not contradict this testimony, the issue of whether Grafio erred in not sanding the roof was clearly raised by the testimony.

Because appellants raised the issue of Grafio's breach of contract in the Small Claims Branch, Judge Levie was obliged, in deciding whether Grafio was entitled to recover, to consider whether Grafio breached the contract, and (if so) whether the breach was substantial. Judge Levie credited Grafio's explanation, concluding that he substantially performed the contract with the exception of "one defect:" the footprint on the roof. Given Grafio's testimony that his only breach was the footprint, which would cost $50 to repair, the judge could properly take the $50 into account in awarding Grafio's damages. *See Turner v. Henning,* 49 App.D.C. 183, 183, 262 F. 637, 637 (1920) (proper measure of damages is the contract price less "the cost of reconstructing the parts which [are] not in accordance with the contract"). Appellants' claim that they were surprised that Judge Levie reached the question of setoff is unpersuasive; the trial testimony, in addition to the judge's explicit warnings that "the findings and judgment in the Small Claims action ... could well have a preclusive effect upon the later litigation in the civil action," should have placed appellants on notice that the issue of the seriousness of Grafio's breach of the contract had been

---

**2.** Appellants maintain that Judge Bacon erred in dismissing the complaint on the grounds of claim preclusion. Appellants correctly note that because there is not a compulsory counterclaim rule in the Small Claims Branch, they cannot be penalized for failing to raise a counterclaim. The trial judge relied, however, on *issue* preclusion in dismissing appellants' breach of contract claim. The order states that "[a]ll issues raised in the Amended Complaint were litigated or should have been litigated" in the Small Claims action. Despite the reference to what "should have been litigated," in context the judge is most likely referring to issue preclusion, the only ground raised by Grafio in his motion for dismissal. *See Goldkind v. Snider Bros., Inc.,* 467

A.2d 468, 473 (D.C.1983). In any event, Grafio is free to argue on appeal that the judgment is correct for reasons other than those relied upon by the trial judge. *See Marinopoliski v. Irish,* 445 A.2d 339, 340 (D.C.1982).

**3.** We rely on Judge Levie's summary of the Small Claims proceedings because neither party has transmitted a transcript, or has provided a "statement of the proceedings" pursuant to D.C.App.R. 10(d) (1990). Appellants bear the burden of establishing the record on appeal. *Jonathan Woodner Co. v. Adams,* 534 A.2d 292, 294 (D.C.1987).

joined. Although appellants proceeded pro se, Mr. Weaver is a member of the Pennsylvania Bar and Ms. Brewer is a member of the District of Columbia Bar, and as attorneys they were in a position to understand the serious legal import of the judge's warnings. Since the breach issue was actually decided in the Small Claims action, appellants cannot re-litigate the issue in the civil action. *See Ali Baba Co., Inc. v. WILCO, Inc.*, 482 A.2d 418, 421 (D.C.1984) (stating the "general rule of collateral estoppel"); *Goldkind v. Snider Bros., Inc., supra* note 2, 467 A.2d at 473 (same); *see generally* 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4416 (1981). The $50 setoff has already been taken into account in the Small Claims judgment, and appellants are precluded from proving that Grafio breached the contract in any other way. Thus, appellants' breach of contract claim in the Civil Division is barred by issue preclusion, and Judge Bacon correctly dismissed that count.

## IV.

Appellants' complaint also states claims for defamation and intentional infliction of emotional distress, both allegedly resulting from Grafio's act of maliciously mailing a letter to several entities accusing appellants of passing a bad check. The trial judge granted summary judgment for Grafio, which the court reviews de novo. *Truitt v. Miller*, 407 A.2d 1073, 1077 (D.C.1979). Viewing the evidence in the light most favorable to the non-moving party, the court will affirm only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Turner v. American Motors Gen. Corp.*, 392 A.2d 1005, 1006 (D.C.1978).

### A. *Defamation*

The defamation claim is based on Grafio's act of sending a letter accusing appellants of "uttering a check for 1845.00 dollars" and of committing a "felony." Assuming its falsity, this is clearly sufficient to qualify as a defamatory statement. *See Johnson v. Johnson Publishing Co.*, 271 A.2d 696, 698 (D.C.1970) ("to accuse one of a crime is libel per se"). The letter was addressed to the "Bar Ethics Committee," with a "cc:" notation at the bottom that copies were sent to the "Board of Professional Responsibility," "Mr. Jim Turner, Esq." (Grafio's attorney), and "WJLA, Channel 7 on Your Side." Grafio sought summary judgment on the ground that the letter was never published in any actionable manner. According to Grafio, his acts of sending the letter to the "Bar Ethics Committee" and to the "Board of Professional Responsibility," were absolutely privileged, and cannot support a defamation action. Moreover, despite the "cc:" notation on the letter, Grafio maintains that the record makes clear that the letter was never sent to "Channel 7 on Your Side."

■ "Complaints submitted to the Board or Bar Counsel shall be absolutely privileged, and no claim or action predicated thereon may be instituted or maintained." D.C.Bar R. XI § 19(a) (1990). Thus, by the very terms of the rule, Grafio cannot be held liable for sending a copy of the letter to the Board of Professional Responsibility. The letter was addressed, however, to the "Ethics Committee" in addition to the Board. Appellants argue that because the Ethics Committee is not specifically mentioned in Rule XI, only a common law qualified privilege should apply. *See* Annotation, *Testimony Before or Communications to Private Professional Society's Judicial Commission, Ethics Committee, or the Like As Privileged*, 9 A.L.R.4th 807, 811 (1981) (many states apply a qualified privilege, allowing defamation action if publication is malicious). We conclude, however, that the Rule XI absolute privilege should extend to letters of complaint that are sent to the Ethics Committee of the D.C. Bar as well. "The rationale for [the absolute] privilege is founded in public policy, established ... for the [benefit] of the public and the advancement of the administration of justice, in that it prevents [consumers] from being deterred by the fear of having actions brought against them if they come forward...." *Id.* at 811. A layperson cannot reasonably be

expected to understand the differing responsibilities of the D.C. Bar's Ethics Committee and the D.C. Board of Professional Responsibility established by this court, and its Bar Counsel. The "Bar Ethics Committee," no less than the "Board of Professional Responsibility," is titled in a manner likely to lead the average person to believe that the committee could be responsible for handling complaints about lawyers. Given this likely perception, the privilege's purpose applies with equal force to letters of complaint sent to the Ethics Committee. Accordingly, summary judgment was appropriate with respect to Grafio's act of sending the letter to the Ethics Committee and the Board of Professional Responsibility.

■ Summary judgment also was appropriate on the defamation theory based on Grafio's sending the letter to "Channel 7 on Your Side." In response to Grafio's Super.Ct. R. 12–I(k) statement of material facts not in dispute and his affidavit denying that the letter was sent to the television station, appellants relied, in their Rule 12–I(k) statement of material facts in dispute, on his admission in the form of the "cc:" notation at the bottom of the letter and the fact that he admitted sending the letter to the other two entities or persons noted as "cc:" 'd. Cf. *Diamond Servs. Co., Inc. v. Utica Mutual Ins. Co.*, 476 A.2d 648, 654 n. 13 (D.C.1984) ("[a] letter properly addressed, stamped and mailed, is presumed to have been duly delivered to the addressee"). Under the circumstances this was insufficient to raise a genuine issue as to whether the letter was, in fact, delivered. Although Grafio admitted sending copies of the letter to two of the three "cc:"s, those copies went to a lawyer and the ethics committee, addressees of a different character for purposes of defamation than Channel 7. In the face of Grafio's affidavit and his Rule 12–I(k) denials that the letter had also been sent to Channel 7, which were sufficient to rebut the presumption of delivery, appellants had to come forward with further evidence. Cf. *Tucker v. Delmar Cleaners, Inc.*, 637 S.W.2d 222, 224–25 (Mo.App.1982) (insufficient evidence of publication, despite a "cc:" notation, when plaintiff's witness testified that "she had not sent a copy of the letter."). Appellants' Rule 12–I(k) statement referred only to Grafio's admission of sending copies to his attorney and the ethics committee.

Therefore, the question is whether it was an abuse of discretion for the trial court to deny appellants' requests for additional time for discovery regarding a nonprivileged mailing to Channel 7. *Blake Constr. Co. v. Alliance Plumbing & Heating Co.*, 388 A.2d 1217 (D.C.1978); *United States v. Little Al*, 712 F.2d 133, 135 (5th Cir.1983). Although the orders denying appellants' requests for additional time (in their opposition to Grafio's motion to dismiss and for summary judgment and in their motion for reconsideration) do not state any reasons, the record shows that appellants failed to refer to the letter being sent to Channel 7 in their original and amended complaints filed May 18, 1989, and June 23, 1989, respectively. It was not until they filed an opposition on November 30, 1989, to Grafio's motion to dismiss and for summary judgment that they requested permission to amend their complaint for a second time. Appellants stated in their opposition to summary judgment that they could not "submit an opposing affidavit at this time because they have not had sufficient opportunity to investigate whether the May 2, 1989 letter was received by the television station."[4] Yet six months had passed

---

[4]. Appellants' original request for additional time in their opposition to the motion to dismiss and for summary judgment failed to comply with Super.Ct.Civ.R. 56(f), which provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the Court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Super.Ct.Civ.R. 56(f) (1990). Grafio contends that the trial judge did not need to address appellants' request because it was not made in a separate motion. The rule makes clear, however, that a party may make such a request in an affidavit opposing summary judgment. Moreover, appellants did attach an affidavit to

since they initiated their lawsuit (five months since they filed an amended complaint and four months since Grafio filed an answer) and they had filed no interrogatories or taken other discovery measures.[5] While appellants were proceeding pro se, they are both lawyers and appellant Brewer is a member of this Bar. *See Lynch v. Meridan Hill Studio Apartments, Inc.* 491 A.2d 515 (D.C.1985).

On the other hand, appellants asserted that their failure to refer to Channel 7 in the amended complaint was an "inadvertent oversight." Once faced with Grafio's denial in November 1989 they requested additional time and endeavored to determine whether Channel 7 could advise if it had received Grafio's letter. See note 5, *supra.* Their earlier efforts to consolidate the two lawsuits had been opposed by Grafio, who sought an expedited trial in the Small Claims Branch, and thus diverted appellants' time and attention to defending that suit; earlier efforts at mediation had failed. Nor could Grafio claim surprise or prejudice as a result of appellants' failure to refer to the mailing to Channel 7 in their amended complaint; Grafio's Rule 12–I(k) statement, as well as his affidavit, addressed the Channel 7 claim. Moreover, at

the time of their initial request for additional time, the time for discovery had not yet expired. *See* Super.Ct.Civ.R. 26(d).

On balance we conclude that the denials of appellants' requests for additional time for discovery did not constitute an abuse of discretion. Even when their motion for reconsideration was denied, appellants had not obtained information from Channel 7 that was critical to their theory of defamation. Obviously, the appellate court is assisted in reviewing an exercise of discretion when the trial court spells out the reasons underlying that exercise.[6] But the record here supports the denials. *See Johnson v. United States,* 398 A.2d 354, 364, 366 (D.C.1979) (record reveals trial court's exercise of discretion "drawn from a firm factual foundation" and "was within the range of permissible alternatives.").

### B. *Intentional Infliction of Emotional Distress*

"Intentional infliction of emotional distress consists of (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Howard Univ. v. Best,* 484 A.2d 958, 985 (D.C.1984) (citations omitted).

their motion for reconsideration in which appellant Weaver stated that (1) the attorney for Channel 7 had informed him that "his client, WJLA–TV and Seven on Your Side, would not inform me as to whether or not they received Mr. Grafio's defamatory letter, unless I served them with a subpoena," and (2) a "subpoena is being prepared and will be served on WJLA on May 11, 1990."

5. On January 31, 1990, over eight months after they filed their lawsuit, appellants, faced with Grafio's denial in November 1989, endeavored to determine whether Channel 7 would be able to advise them if it had received a copy of the letter. They wrote a letter to Channel 7 on January 31, 1990, which stated:

Unfortunately, a letter which may have been sent to your office in March of 1989 has become an issue in a law suit. All I need to know at this point is if you maintain a file of such letters sent to your office. Do you? Is it possible for your files to be checked to see if you did receive it?

Please do not undertake to retrieve it at this time, but let me know if such a retrieval is possible....

An affirmative response by Channel 7 still would not have provided the evidence that appellants needed to overcome Grafio's denials. There would still not have been evidence to show receipt by Channel 7 of Grafio's letter.

When the television station apparently did not respond to the January 31, 1990, letter, appellants' further efforts to obtain information from Channel 7 still did not show that appellants had done what was required. Appellant Weaver's affidavit stated that the attorney for Channel 7 had advised that the station "would not inform me as to whether or not they received Mr. Grafio's defamatory letter, unless I served them with a subpoena." The affidavit further stated that a "subpoena is being prepared and will be served on [Channel 7] on May 11, 1990." The record does not contain any indication that the subpoena to Channel 7 had been served when appellants' motion for reconsideration was denied on May 22, 1990.

6. In addition to providing no reasons for the denials, neither the order granting Grafio's motion to dismiss nor the order denying appellants' motion for reconsideration made explicit reference to the request for additional time for discovery.

Grafio contends that even viewed in the light most favorable to appellants, his conduct is not sufficiently outrageous to warrant liability for intentional infliction of emotional distress. We agree. The complaint alleges that Grafio knew at the time he wrote the letter that appellants' check was actually stopped pursuant to a payment dispute, and that Grafio maliciously sent appellants a copy of the letter, knowing that the allegations in it were false. For a defendant to be liable for intentional infliction of emotional distress, however, "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that ... his conduct has been characterized by 'malice' ..." RESTATEMENT (SECOND) OF TORTS § 46 comment d (1965). "To be actionable, conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" *Howard Univ. v. Best, supra,* 484 A.2d at 986 (quoting *Jackson v. District of Columbia,* 412 A.2d 948, 957 (D.C.1980)).

Grafio's alleged conduct is not so outrageous as to raise a jury question on the intentional infliction of emotional distress claim. *See Howard Univ. v. Best, supra,* 484 A.2d at 985 ("It is for the trial court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery"). Although the court must accept as true, for purposes of summary judgment, appellants' claim that Grafio knew, at the time he wrote the letter, that the check had been stopped pursuant to a payment dispute, appellants concede that they gave Grafio a stopped check in an effort to deceive him into thinking that he had been paid. Given these circumstances, Grafio's reaction of mailing the letters of complaint was not so outrageous as to be "beyond all possible bounds of decency." Thus, summary judgment was appropriate for the intentional infliction of emotional distress claim.

Accordingly, the dismissal of the breach of contract claim and the summary judgment on the defamations and intentional infliction of emotional distress claims are affirmed.