**In re Harry T. SPIKES, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 03–BG–803.**

District of Columbia Court of Appeals.

Argued Sept. 1, 2004.

Decided Sept. 1, 2005.

Harry T. Spikes, pro se.

Catherine L. Kello, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel at the time the brief was filed, was on the brief, for the Office of Bar Counsel.

Before FARRELL and RUIZ, Associate Judges, and PRYOR, Senior Judge.

RUIZ, Associate Judge:

Respondent, Harry T. Spikes, has filed exceptions to the report of the Board on Professional Responsibility ("the Board") finding that he violated Rules 3.1 and 8.4(d) of the District of Columbia Rules of Professional Conduct by filing a frivolous defamation claim, based on a privileged communication to Bar Counsel alleging attorney misconduct and other similarly privileged statements. The Board recommends that respondent should be suspended from the practice of law for thirty days. We hold that the record supports the Board's finding that respondent violated Rule 3.1 by bringing a defamation suit in the face of consistent and clear case law holding that an absolute privilege attaches to complaints made to Bar Counsel. Respondent's persistence in maintaining this frivolous suit, including an appeal, also "seriously interfere[d] with the administration of justice," in violation of Rule 8.4(d). In light of these ethical violations and respondent's disciplinary history, we adopt the Board's recommended sanction and order respondent suspended from the practice of law for thirty days.

I.

Respondent has been licensed to practice law in the District of Columbia since 1983. In the Spring of 1997, he represent-

ed the plaintiff before the United States District Court for the District of Columbia in the case of *Byars v. District of Columbia, et. al.,* U.S. D.C. Civil Action No. 96–1129 ("the *Byars* case"). Mr. Byars was then an inmate at the Lorton Correctional Institution who brought suit against the District of Columbia claiming that he had been assaulted on various occasions by both inmates and guards at the correctional facility.[1] The gravamen of the complaint was that the alleged beatings and stabbings had left Mr. Byars paralyzed, and confined to a wheelchair. The then-Office of Corporation Counsel—now the Office of Attorney General for the District of Columbia—defended the suit on behalf of the District of Columbia; Assistant Corporation Counsel John McCabe was the primary attorney working on the *Byars* case for the District. On June 5, 1997, Martin L. Grossman, then-Deputy Corporation Counsel, wrote a letter to the Office of Bar Counsel concerning respondent's behavior in the *Byars* case. Mr. Grossman made it clear that the purpose of his letter was to fulfill his duties under Rule 8.3 to report the unethical behavior of other attorneys. In the letter, Mr. Grossman detailed a conversation between respondent and Dr. Eliza Taylor on March 5, 1997, as reported to Mr. McCabe by Dr. Taylor.

Dr. Taylor, the medical director at the Lorton facility, had helped secure a room for the deposition of Mr. Byars in connection with his suit against the District. According to Mr. Grossman's letter, Dr. Taylor stated, in the presence of respondent and Mr. McCabe, that she had observed Mr. Byars moving his legs and standing, which obviously undermined his allegations

that the claimed abuse had left him paralyzed and confined to a wheelchair. Mr. Grossman further stated in the letter that Dr. Taylor later reported to Mr. McCabe that:

> [respondent] told Dr. Taylor the following: that she did not have to express her view regarding Mr. Byars' injuries, that he was hoping to get a large judgment from the District of Columbia in the lawsuit, and that she could be a part of that judgment, and could retire comfortably.

Mr. Grossman's letter also reported that respondent had a conflict of interest in the *Byars* case, see *supra* note 1, and that respondent had been delinquent in paying his bar dues. In addition to the letter to Bar Counsel, Mr. Grossman also mailed a similar letter to the United States Attorney on the same day.

It appears that in the course of defending the *Byars* case, Mr. McCabe tried for some time—before Mr. Grossman sent the letters—to secure an affidavit from Dr. Taylor that confirmed her allegations that respondent was trying to unlawfully influence her potential testimony concerning Mr. Byars's injuries. It is undisputed that Mr. McCabe prepared and transmitted a proposed affidavit to Dr. Taylor for her signature. For reasons which are not found in the record, Dr. Taylor never signed the affidavit. Dr. Taylor's deposition was taken on June 30, 1997, as part of Byars's federal lawsuit. Although the record does not contain the transcript of this deposition, there are a few short quotes in various pleadings filed by respondent in the defamation lawsuit he filed against the District (discussed *infra*) which tend to support Mr. McCabe's representations

---

1. Mr. Byars claimed to have been stabbed on one occasion by another inmate, who also claimed to have been stabbed in retaliation by Mr. Byars. Respondent candidly admits that he represented both Mr. Byars and the other inmate in their respective legal actions against the District, but added that he did so after obtaining signed consent from both clients.

that Dr. Taylor believed respondent was trying to bribe her, and that she informed Mr. McCabe of this fact.[2]

On November 28, 1997, respondent filed suit in the United States District Court against Messrs. Grossman and McCabe, as well as various other members of the Office of Corporation Counsel, and the District of Columbia. The suit alleged that the defendants had conspired to defame respondent, and had thereby deprived him of his civil rights, in violation of 42 U.S.C. §§ 1981, 1983 and 1985 (2000). In his complaint, respondent claimed that the same defamatory statement was published on four occasions: (1) in the draft affidavit which Mr. McCabe sent to Dr. Taylor; (2) in a memorandum filed by the Office of Corporation Counsel on April 1, 1997 in support of a motion for a continuance in the *Byars* case; (3) in the letter mailed to Bar Counsel on June 5, 1997; and (4) in the letter of the same date mailed to the United States Attorney. The suit sought damages in the amount of

$5,000,000, as well as punitive damages in the same amount.[3]

The U.S. District Court dismissed respondent's complaint for failure to state a claim, noting that the allegedly defamatory statements in the continuance motion and the draft affidavit were privileged as they were made in the context of a judicial proceeding, and that a "privilege applied to [the defendants'] referral of the matter to the D.C. Bar." The court concluded that once the defamation claims were dismissed, the conspiracy claims and the civil rights claims also would fail because they were premised on the underlying allegations of defamation. The United States Court of Appeals for District of Columbia summarily affirmed in an unpublished opinion, holding that "[t]he merits of the parties' positions are so clear as to warrant summary affirmance."

## II.

Respondent was charged by Bar Counsel with violating D.C. Bar Rule XI,

---

**2.** The District Court opinion dismissing respondent's defamation action that is the subject of this disciplinary proceeding notes that the *Byars* case was eventually settled, but the record does not provide any information regarding the terms of that settlement.

**3.** Respondent produced two pieces of evidence in the federal lawsuit in support of his claim of defamation, and he continues to rely on these two documents in the disciplinary case. The first is an unsigned, anonymous two-page letter dated June 5, 1997, which is written on Corporation Counsel stationery, and addressed to the U.S. Attorney and to Bar Counsel. The anonymous letter alleges that Mr. Grossman directed Mr. McCabe to delay the *Byars* trial "in any way [he] could," and that "it became clear that Mr. McCabe had lied about what Dr. Taylor had said to him." The letter also alleges that members of the Office of Corporation Counsel harbored personal animus against respondent. The letter is printed on two pages, both of which have the Corporation Counsel's letterhead. Mr.

Grossman testified before the hearing committee that the fact that both pages are on letterhead stationery makes the letter of dubious authenticity, because it is office practice for only the first page of a multi-page letter to be printed on letterhead stationery.

The second letter purports to be from Mr. McCabe to Dr. Taylor. The letter advises Dr. Taylor that she "may face criminal charges for obstructing a criminal investigation involving Harry T. Spikes" if she does not sign the affidavit which Mr. McCabe has prepared. This letter also is unsigned, and Mr. McCabe has denied writing the letter, or even knowing of its existence until confronted by it during the litigation.

Because the complaint filed in federal court was dismissed for failure to state a cause of action, there has been no determination on the authenticity of these documents. In the disciplinary action, the Board similarly had no need to come to a definitive ruling on the issue, but it expressed grave reservations about the authenticity of the documents upon which respondent rested his complaints.

§ 19(a), and Rules 3.1 and 8.4(d) of the District of Columbia Rules of Professional Conduct.[4] The Board determined that Bar Rule XI, § 19(a), which grants a privilege to complaints made to Bar Counsel, does not provide an independent basis for attorney discipline, but that the rule provides a standard to evaluate respondent's conduct under Rule 3.1 of the professional conduct rules, which makes it a violation to file a frivolous claim.[5] The Board also found that respondent's frivolous filing had burdened the administration of justice in violation of Rule 8.4(d). The Board has recommended that respondent be suspended from the practice of law for thirty days.

This court "shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record," and shall adopt the recommended discipline "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar Rule XI, § 9(g); *In re Herndon,* 596 A.2d 592, 597–98 (D.C.1991).

### III.

■ Rule 3.1 of the Code of Professional Conduct provides that:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good-faith argument for an ex-

tension, modification, or reversal of existing law.

The Board found that respondent violated Rule 3.1 by bringing a frivolous defamation suit based on Mr. Grossman's letter to the Office of Bar Counsel. The suit was frivolous, the Board concluded, in light of the immunity granted by Rule XI, § 19(a), which provides that "complaints submitted to the Board or Bar Counsel shall be *absolutely privileged,* and *no claim or action* predicated thereon may be instituted or maintained." (Emphasis added.)

Taking exception to the Board's findings, respondent argues that his lawsuit was based on four defamatory publications,[6] and not solely on the letter to Bar Counsel.[7] Thus, he contends that even if that letter was privileged—which he contests—it was merely one of four alleged publications, and the defamation suit as a whole was therefore not frivolous. We disagree. All four publications were privileged, rendering his defamation suit frivolous, in violation of Rule 3.1.

*Statements made in the course of a judicial proceeding.*

In his defamation case, Mr. Spikes alleged that he was defamed when Mr. McCabe attempted to secure an affidavit from Dr. Taylor concerning respondent's attempted bribery and when the District sought a continuance in the *Byars* case

---

**4.** Respondent's alleged misconduct in the *Byars* case that was the subject of Mr. Grossman's letter Bar Counsel is not the subject of this disciplinary proceeding.

**5.** The hearing committee found that respondent violated D.C. Bar Rule XI, § 19(a). Bar Counsel agrees with the Board's determination that the Bar Rule does not provide an independent basis for disciplinary action.

**6.** The alleged publications occurred (1) in the draft affidavit which Mr. McCabe sent to Dr.

Taylor; (2) in a memorandum filed by the Office of Corporation Counsel on April 1, 1997, for a continuance in the *Byars* case; (3) in the letter mailed to Bar Counsel on June 5, 1997; (4) in the letter mailed to the United States Attorney on the same date.

**7.** While it is fair to say that the Board was primarily focused on the letter to Bar Counsel, the Board also acknowledged that there were three other claimed instances of defamation, and that these also were privileged.

which included the allegedly defamatory statement in a supporting memorandum.

■ Submitting a memorandum of law in support of a motion filed in the course of a legal proceeding is cloaked with the absolute privilege that attaches to statements made within the judicial process. *See, e.g., Arneja v. Gildar,* 541 A.2d 621, 623 (D.C. 1988) ("In this jurisdiction, an attorney is protected by absolute privilege to publish false and defamatory matter of another during the course of or preliminary to a judicial proceeding, provided the statements bear some relation to the proceeding.") (internal quotations and citations omitted). The allegedly defamatory statement in the supporting memorandum was obviously relevant to the District's request for a continuance, as it was made for the express purpose of investigating whether respondent was trying to influence Dr. Taylor, a potential witness in the case. The affidavit sent to Dr. Taylor for her signature was prepared after respondent had initiated the *Byars* action against the District and was directly related to the case. We have held that even statements made prior to the initiation of a judicial proceeding, while an attorney is investigating a potential claim, are embraced within the absolute privilege. *See Finkelstein, Thompson & Loughran v. Hemispherx Biopharma Inc.,* 774 A.2d 332, 342 (D.C. 2001).

The privilege for statements made in the course of judicial proceedings "is more than a defense to liability. The privilege is intended to afford an attorney absolute *immunity* from actions in defamation for communications related to judicial proceedings." *Id.* at 340 (internal quotation and brackets omitted). As absolute immunity attached to the submission to the court of the memorandum of law, and the attempt to secure an affidavit from Dr. Taylor related to the *Byars* case, it was clearly in contravention of existing law for respondent to predicate his defamation suit upon these statements.

*Complaints to Bar Counsel*

Respondent also based his claims of defamation on Mr. Grossman's letter to Bar Counsel. The consistent decisional law of this court has held that D.C. Bar Rule XI, § 19(a) prohibits a litigant from maintaining a cause of action based on an ethical complaint to Bar Counsel. *See, e.g., Weaver v. Grafio,* 595 A.2d 983, 988 (D.C.1991); *In re Nace,* 490 A.2d 1120, 1123–24 (D.C. 1985); *see also Solomon v. Supreme Court of Fla.,* 816 A.2d 788, 790 (D.C.2002) (citing Rule XI, § 19(a) for the proposition that "this jurisdiction generally provides immunity to all its bar disciplinary participants"). Despite the plain meaning of Rule XI, § 19(a), and the consistent interpretation given the rule by this court, respondent maintains that Rule XI, § 19(a) is ambiguous, and that his actions did not violate Rule 3.1 because the defamation suit came within that rule's exception for "a good-faith argument for an extension, modification, or reversal of existing law."

As noted above, the plain text of Rule XI, § 19(a) makes clear that "no claim or action predicated" on complaints to bar counsel "may be instituted or maintained." Respondent fails to cite a single case which has held that an attorney may maintain a legal action based on an ethical complaint to Bar Counsel. And with good reason; the case law of this court weighs entirely against a suit such as the one respondent filed against the District and its attorneys. This court has held that it has "the authority to declare immune from suits or action under the law of the District of Columbia, the conduct of those who provide information or make complaint to the Board. Our rule does so." *In re Nace,* 490 A.2d at 1124 (interpreting D.C. Bar Rule XI, § 9(a), the verbatim predecessor to Rule

XI, § 19(a)). Since *Nace*, we have consistently held that Rule XI, § 19(a) means what it says; that complaints made to Bar Counsel are "absolutely privileged," and those making such complaints are absolutely immune from suit. *See, e.g., Weaver,* 595 A.2d at 988 (holding that "by the very terms of the rule, [the complainant] cannot be held liable for sending a copy of the [complaining] letter to the Board on Professional Responsibility"); *Solomon,* 816 A.2d at 790 (citing Rule XI, § 19(a) for the proposition that "this jurisdiction generally provides immunity to all its bar disciplinary participants").

 Respondent nonetheless maintains that Rule XI, § 19(a) is "ambiguous" because in contrast to the term "absolute privilege" used in the Rule, no similar adjective modifies the word "immunity." He therefore argues that the immunity granted by the rule is not necessarily absolute. As a matter of textual interpretation, it would be difficult to give effect to the term "absolute privilege" without similarly construing the word "immunity." "Privilege" is defined as "a special legal right, exemption, or *immunity* granted to a person or class of persons." BLACK'S LAW DICTIONARY, 1234 (8th ed. 2004) (emphasis added). The phrase employed in the rule, "absolute privilege," is defined as "a privilege that *immunizes* an actor from suit, no matter how wrongful the action might be." *Id.* Therefore, whether one turns to the plain meaning of the terms employed in Rule 19(a), or the interpretation of the Rule found in our cases, it cannot seriously be maintained that Rule 19(a) is ambiguous in its provision of an unqualified immunity resulting from its grant of absolute privilege. Under the circumstances, such an argument would not be made in "good faith" as required by the permissive clause of Rule 3.1.

*Statements to law enforcement authorities*

The fourth instance of defamatory publication alleged in respondent's civil suit was the letter sent by Mr. Grossman to the United States Attorney. This letter was sent on the same day, and included the same allegations that were made in, the letter to Bar Counsel.

 Unlike the three publications made to the court and Bar Counsel, only a qualified privilege attaches to reports made to law enforcement authorities for investigation. *See Carter v. Hahn,* 821 A.2d 890, 894 (D.C.2003) (" '[A] qualified privilege exists when a statement about suspected wrongdoing is made in good faith to law enforcement authorities.' ") (quoting *Columbia First Bank v. Ferguson,* 665 A.2d 650, 655 (D.C.1995) (citations omitted)). Like any other qualified privilege, the speaker is afforded immunity unless it is shown that the defamatory statement was malicious. *See id.* at 656. The District Court's order dismissing respondent's complaint recognized that the letter to the U.S. Attorney was subject to a qualified privilege, and implicitly determined that malice had not been sufficiently alleged in respondent's defamation complaint. As noted, the District Court's dismissal was summarily affirmed on appeal. Respondent is therefore collaterally estopped from arguing in this proceeding that he could overcome the qualified privilege by showing malice. *See Washington Medical Ctr. v. Holle,* 573 A.2d 1269, 1283 (D.C. 1990). Even if he could have, however, Rule 3.1 by its terms prohibits not only the "bring[ing]" of frivolous proceedings but also prohibits the assertion—within an otherwise valid lawsuit—of "an issue therein" which is frivolous. Therefore, given that three of the four alleged defamatory publications were absolutely privileged, we are satisfied that clearly frivolous claims and

issues predominated the federal defamation suit.

■ We have not previously considered what constitutes a "frivolous" proceeding or issue that warrants sanction under Rule 3.1. We have, however, considered analogous provisions in other rules which we find instructive. In determining whether a pleading is frivolous and subject to sanction under Superior Court Civil Rule 11 we have said that "consideration should be given to the clarity or ambiguity of the law." *District of Columbia v. Fraternal Order of Police,* 691 A.2d 115, 119 (D.C. 1997) (citing *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1014 (2d Cir. 1986)). "In deciding whether a claim is warranted under existing law, among the factors for consideration are the plausibility of the position taken, and the complexity of the issue." *Id.* Within the context of our own Rules, which authorize the court to impose sanction "when … an attorney practicing before the court takes an appeal or files a petition or motion that is frivolous," D.C.App. R. 38, we have stated that an appeal is frivolous when it is "wholly lacking in substance" and not "based upon even a faint hope of success on the legal merits." *Slater v. Biehl,* 793 A.2d 1268, 1278 (D.C.2002) (quoting *Pine View Gardens, Inc. v. Jay's Frosted Foods, Inc.,* 299 A.2d 536, 537 (D.C.1973)). Thus, we have imposed upon attorneys an obligation to undertake an "objective appraisal of merit" before filing an appeal in a civil matter. *Tupling v. Britton,* 411 A.2d 349, 352 (D.C.1980). An appeal is frivolous if, after undertaking such an appraisal, a reasonable attorney would have concluded that there was not even a "faint hope of success on the legal merits" of the action being considered. *Slater,* 793 A.2d at 1278. We adopt the same standard to the

evaluation of attorney conduct for purposes of Rule 3.1. Given the consistent and unambiguous state of the law concerning the privileges which attached to the allegedly defamatory statements, had an "objective appraisal of merit" been undertaken here, a reasonable attorney would have easily concluded that the defamation lawsuit was meritless.

We recognize that "the law is not always clear and never is static," Rule 3.1, *cmt.* [1], and that in zealously arguing their clients' causes lawyers must be able to press for change and reform in the law. Rule 3.1 expressly provides that lawyers are not subject to sanction if "there is a basis for doing so that is not frivolous, which includes a good-faith argument for an extension, modification, or reversal of existing law." But that "safe harbor" requires a position that is reasoned and supported. Respondent maintains that he brought suit in a good-faith effort to vindicate his reputation as a practicing attorney, and as a challenge to the privilege afforded under D.C. Bar Rule XI, § 19(a) to complaints made to Bar Counsel. However, nothing in the record of the defamation suit indicates that this was the purpose of the case. It was a straightforward defamation action brought in spite of, and not in challenge to, the privileges afforded the statements at issue.[8] Respondent's argument, therefore, appears to be merely a *post hoc* justification as to why he should not be sanctioned for bringing the defamation action. *See In re Alexander,* 513 A.2d 781, 791–92 (D.C.1986) (imposing sanctions under DR 6–101(A)(2) for bringing an inadequately prepared action, and rejecting claim that suit was brought as a good-faith attempt to create "new law," where the framing of the issue and legal memoranda lacked indicia that the suit was brought to

8. Nowhere, for example, either in District Court or in the present proceeding has respondent cited relevant authority challenging the lawfulness of such privileges.

propose a good-faith extension of existing law).

We make special note of the fact that respondent's defamation complaint was centered on the letter sent to Bar Counsel by Mr. Grossman. As we said in *In re Nace,* this court has exercised its authority "to declare immune from suits or action under the law of the District of Columbia, the conduct of those who provide information or make complaint to the Board." 490 A.2d at 1123. We have provided such immunity in Bar Rule XI, § 19(a) so as to encourage those who have ethical complaints against members of this bar to come forward and make those assertions without fear of reprisal. Respondent makes a policy argument that we should not immunize those who would use the disciplinary system to make baseless accusations to harm the professional reputations of attorneys. Respondent's argument overlooks that the D.C. Bar Rules also provide confidentiality for initial complaints to Bar Counsel, so that members of the bar will not be harmed by baseless complaints made out of spite or malice, or those which are determined, after investigation, to have little merit. *See* Bar Rule XI, § 17(a); *In re Alexander,* 513 A.2d at 782 (noting that the "Bar's disciplinary process insulates members from unfounded complaints ... it is Bar Counsel who decides whether to initiate an investigation"). Thus, when a defamation action is brought based on such a complaint, it contravenes our system for the regulation of those who practice before us; a system that encourages the reporting of unethical behavior, while ensuring that only meritorious claims are prosecuted and made known to the public.

## IV.

The Board also found that by bringing a defamation action based on privileged communications, respondent had "engage[d] in conduct that seriously interferes with the administration of justice" in violation of Rule 8.4(d). We have established a three-pronged analysis to determine whether an attorney has engaged in conduct which interferes with the administration of justice. First, "the conduct must be improper.... [It] may be improper ... because it violates a specific statute, court rule or procedure." *In re Hopkins,* 677 A.2d 55, 61 (D.C.1996). Second, "the conduct itself must bear directly upon the judicial process (*i.e.,* the 'administration of justice') with respect to an identifiable case or tribunal." *Id.* Lastly, "the attorney's conduct must taint the judicial process in more than a *de minimis* way; that is, at least potentially impact upon the process to a serious and adverse degree." *Id.*

The Board concluded that respondent's actions in filing the defamation suit met the three prongs of the *Hopkins* analysis, and therefore violated Rule 8.4(d). By filing suit despite the grant of immunity in Rule XI, § 19(a) and cases outlining the privilege for judicial proceedings and statements to law enforcement authorities, respondent engaged in conduct that was "improper ... because it violates a specific statute, court rule, or procedure." *In re Hopkins,* 677 A.2d at 61. Since the conduct at issue is the initiation and prosecution of the defamation suit filed in U.S. District Court, it is identifiable to a specific case. As for the degree of harm to the judicial process, the Board considered several factors, including that respondent sought "astronomical amounts of compensatory and punitive damages," that the lawsuit impeded Bar Counsel's ongoing investigation of respondent and necessitated "extensive briefing of the various positions over the course of 12 months prior to the dismissal of [r]espondent's lawsuit by [d]efendant's motion," and then required addi-

tional pleadings before the D.C. Circuit Court of Appeals. The Board also noted that the defendants to the lawsuit, "who were the District of Columbia Government and five of its top lawyers, including several in the General Litigation Division, were required to have counsel and their attention was diverted from other matters, including other litigation on behalf of the District Government."

In discussing the impact of frivolous actions, we have noted in our appellate context that frivolous actions "waste the time and resources of this court, delay the hearing of cases with merit and cause appellees unwarranted delay and added expense." *Slater*, 793 A.2d at 1277 (quoting *Tupling*, *supra*). The impact of a frivolous action brought before federal trial and appellate courts is no different; thus, more than a *de minimis* unnecessary burden was imposed on the Federal courts. We would add that respondent's actions in this disciplinary proceeding have also burdened Bar Counsel and the disciplinary system, as well as this court.

We therefore conclude that the record supports the Board's finding that respondent's conduct has "seriously interfere[d] with the administration of justice" in violation of Rule 8.4(d).

## V.

■ The Board recommends that respondent be suspended from the practice of law for thirty days. This is a recommendation to which we defer, "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." Bar Rule XI, § 9(g). Under the circumstances of this case, we find the sanction warranted.

Sanctions have been imposed under Rule 8.4(d) when an attorney refuses to cooperate with Bar Counsel in the investigation of ethical complaints made against that attorney. A review of our recent cases imposing sanctions for that conduct shows that a thirty-day suspension has been imposed several times within the past few years for such conduct. *See, e.g., In re Beller*, 802 A.2d 340, 340 (D.C.2002); *In re Beaman*, 775 A.2d 1063 (D.C.2001); *In re Freed*, 773 A.2d 436, 437 (D.C.2001); *In re Steinberg*, 761 A.2d 279, 280 (D.C.2000). While respondent did not directly refuse to cooperate with Bar Counsel, by filing an unfounded defamation suit against one who has made a complaint to Bar Counsel, respondent indirectly interfered with Bar Counsel's ongoing investigation of the ethical complaint. Thus, a similar sanction is warranted in this case.[9]

We also consider that this is not respondent's first ethical infraction. Bar Counsel has advised the court—without contradiction from respondent—that it has issued informal admonitions to respondent

---

9. As Bar Counsel notes, and our research confirms, we have never before had occasion to impose sanctions for a violation of Rule 3.1. Thus, without cases to guide the imposition of sanctions, we defer to the Board's recommended sanction, which is not challenged by Bar Counsel. We do take notice, however, that other jurisdictions have imposed harsher sanctions on attorneys who have brought defamation actions based on ethical complaints made by former clients, despite privileges afforded to those complaints, *see, e.g., In re Adams*, 293 Or. 727, 652 P.2d 787, 793–94 (1982) (imposing a sixty-day suspension); *Columbus Bar Ass'n v. Elsass*, 86 Ohio St.3d 195, 713 N.E.2d 421, 424–25 (1999) (imposing an indefinite suspension), or engaging in otherwise frivolous litigation. *See In re Canatella*, 769 A.2d 142, 142 (D.C.2001) (imposing reciprocal discipline—an eighteen month suspension with all but thirty days stayed—on an attorney who "repeatedly counseled and/or maintained unjust lawsuits in willful violation of section 6068(c) of the California Business and Professions Code").

in two previous cases, one involving a false allegation of assault made against an opposing attorney, and the other involving communications made to an unrepresented party during the course of litigation.

We adopt the Board's recommendation that respondent be suspended from the practice of law for thirty days, and hereby suspend him for such a period of time, effective thirty days after the date of this order. *See* D.C. Bar Rule XI, § 14(f). We direct respondent's attention to the requirements of D.C. Bar Rule XI, § 14(g), and their effect on his eligibility for reinstatement. *See* D.C. Bar Rule XI, § 16(c).

*So ordered.*